Pearson, J.
We have considered the several questions presented by the case as made up by his Honor, and have come to the conclusion that there is no error.
The first exception is untenable. The condition of the deceased was such as to make his declarations, competent evidence, as “dying declarations.” It is not necessary, that the person should be in articulo mortis, (the very act’ of dying ;) it is sufficient if he be under the apprehension ! of impending dissolution ; when all motive for concealment or falsehood is presumed to be absent, and the party is in a position as solemn, as if an oath had been administered. The evidence was competent. The degree of credit to which it was entitled, was a matter for the jury; it was liable to be impeached, like the testimony of a sworn witness; and the jury were at liberty to give it more or less weight, as from the conduct of the witnessi and the attending circumstances, they might suppose him to be more or less impressed by the obligation of his oath or the solemnity of the condition in which he stood.
- The second exception, because of the rejection of the opinion of the wife of the deceased, that “she thought, the deceased thought, ho would not die from the wounds,” is also untenable. A witness is allowed to give his opinion as to the sanity of one at the time he made his will: or as to theafFectionof a wife towards her husband, viz: whether she loved him or not; because a witness may have acquired a knowledge of the fact, from a thousand little circumstances accruing at different times which it is not possible to communicate; but the matter to which our attention is now directed is not of that character.— What the deceased thought of his condition, was to be judged of by the state of his wounds, and what he then and there said and did. These circumstances it was in the power of the witness to communicate to the Court; and the Judge did right, requiring her to do so, whereby he was enabled to form an opinion, instead of allowing *552 the witness to form one for him. Upon the third ground of exception, the prisoner has no right to complain. The Judge, perhaps, entered more largely into the discussion of the law of homicide, than the facts of the case called for, but he confined himself to the announcement of well settled principles, except in one instance ; there he erred ig favor of the prisoner. In this he held, that if the deceased at the time he first made his declaration, was in a condition to make the evidence competent, but afterwards got better for a short time, and then had hopes of recovery, this would make the prior declaration incompetent.— This cannot be law. We presume his Honor was misled by a misapprehension of Rex v. Faquet, 32 E. C. L. 501, where it is said, that a subsequent hope may reflect back to the time of a prior declaration, so as to show that the deceased was not in fact in a condition to make his; declarations competent. But this falls very far short of supporting the position, that, if, at the prior date the deceased was in fact in a condition to make his declarations competent, a hope of recovery at a subsequent time would make that incompetent which was before competent.
The fourth exception has been fully considered in treating of the third.
The fifth exception, for an omission to charge, cannot be entertained, because the point was not made during the trial, and at the close of the charge, the counsel on both sides expressly stated, they desired no further instructions to the jury.
The last ground of exception, because of the irregularity and misconduct of the jurjq is the only one upon which we have had much difficulty. Perhaps it would have been well, had his Honor in his discretion, set aside the verdict and given a new trial, asa rebuke to the jury and an assertion of the principle, that, trials must not only be fair, hut above suspicion. This, however, was a matter of discretion, which we have no right to reverse. Our en- *553 quiry is, was the misconduct and irregularity such as to vitiate the verdict, to make it in law, null and void, and no verdict ?
In the consideration of this question, we have had oe.ca* sion to review State v. Miller, 1 Dev. & Bat. 500, and it seems to us, that the decisions of the Court and the dis* tinction between cause fora new trial, which is a matter of discretion, and cause for a mistrial, which is a matter of law, is fully sustained by authority and by reason.— The eminent talent of Juge Gaston, in a long and la-boured opinion, was exerted on the other side of the ques* tion But his argument fails in this ; he does not give due weight to the fact, that, according to the modern practice, the presiding Judge, in favorem vitae, has a dis* cretion to give the prisoner a new trial, when suspicion is put upon the conduct of the jury, and although evidently oppressed by the position, that if such irregularity works a mistrial so as to make no verdict, a prisoner acquitted may again be put on trial, he attempts to escape the conclusion by a denial of the truth of the position, which is not supported by authority or by any sufficient reason.
We wish not to be understood, as disclaiming a right to grant a venire de novo, when it is made to appear on the record, that there has not been a fair trial; on the contrary, we assert that right whether it is to be exercised for or against the prisoner. We take this plainposition ; if the circumstances are such as merely to put suspicion on the verdict, by showing, not that there was, but that there might have been undue influence brought to bear on the jury, because there was opportunity and a chance for it — it is a matter within the discretion of the presiding Judge. But if the fact be that .undue influence was brought to bear on the jury, as if they were fed at the charge of the prosecutor or of the prisoner, or if they be -solicited and advised how their verdict should be, or if they have other evidence than that which was offered ©:i *554 the trial, in ail such eases, there has in contemplation of .law been no trial; and this Court, as a matter of law, will direct a trial to be bad, whether the former proceeding purports to have acquitted or convicted the prisoner.
In the argument, the prisoner’s counsel assumed the positron, that dying declarations are excluded as evidence in our State, by the provision of the 7th sec. of the Bill of Rights: “In all criminal prosecutions, every man has a right to be informed of the accusation against him, and to confront the accusers and witnesses with other testimony.” We do not feel the force of the argument. The witness who proved what the dying man said, may be confronted with “other testimony,” and the case is exactly the same as that of a witness who proves that the prisoner executed a certain deed, or wrote a certain letter, whereupon the deed or the letter is received as evidence against him.— This section of the Bill of Rights was aimed at the old practice, by which prisoners were not allowed to have witnesses sworn on their behalf, and the testimony came altogether on the part of the crown. Our ancestors did not intend to deny the rule of evidence, as to dying declarations, but to assert that, in criminal prosecutions, prisoners ought to be allowed to have witnesses in their behalf, sworn and examined.
There is no error.
Per Curiam. Ordered to be certified accordingly.