ROBERT F. O'BERRY, PLAINTIFF v. LINNIE DONALD PERRY, DEFENDANT, AND THE GREAT AMERICAN INSURANCE COMPANY, ADDITIONAL DEFENDANT.

(Filed 15 December, 1965.)

**1. Automobiles § 11—**

The function of a headlight is to enable a motorist, under normal atmospheric conditions, to see an object 200 feet ahead; the function of a parking light is to render a vehicle visible under similar conditions for a distance of 500 feet.

**2. Appeal and Error § 42—**

Defendant testified to the effect that he did not have his son enter for him a plea of guilty in the recorder's court to a charge of failing to yield the right of way, but that he did not object to it. In recapitulating the evidence the court charged that defendant testified that his son pleaded him guilty before a justice of the peace for failing to yield the right of way. *Held:* If defendant deemed the court's statement to be inaccurate he should have called the matter to the court's attention in time for correc-

tion, and upon defendant's failure to do so he waives error, if any, therein.

**3. Trial § 50—**

Parties, counsel, witnesses, relatives and friends should refrain from any conduct which casts the slightest suspicion upon the integrity of the trial, and should scrupulously avoid any communication and social contact with jurors during the trial.

**4. Same—**

Defendant moved for a new trial on the ground that during the noon recess while the trial was in process a juror had walked with plaintiff and one of his witnesses from the courthouse to lunch. The evidence adduced at the court's inquiry tended to show that the encounter was accidental, that the parties thereto did not discuss the case, and that the incident in no way affected the outcome of the trial. *Held:* The court's denial of the motion to set aside the verdict will not be disturbed.

**5. Same—**

The granting or denial of a motion for a mistrial for alleged misconduct of a juror rests in the sound discretion of the trial judge, and his ruling thereon will be upheld on appeal unless it is clearly erroneous.

APPEAL by defendant Perry from *Bundy, J.,* May 1965 Session of BERTIE.

Action and counterclaim for personal injuries and property damage resulting from a collision between plaintiff's automobile and defendant's pickup truck.

On November 12, 1963, between 5:30 and 5:45 p.m., plaintiff, aged 38, was driving his new Ford automobile (it had 4-6 miles on it) south on highway #45, a two-lane, paved road. At a point about one mile south of Colerain, defendant, aged 78, drove his truck from a farm lane into the highway, and the collision resulted. Plaintiff's evidence tends to show: It was dark; his headlights were burning. His speed was between 40 and 50 MPH. Defendant drove his unlighted truck from a farm lane used by him and his tenants onto the highway directly in front of plaintiff, who was no more than one or two car-lengths away. The front of plaintiff's automobile struck the left side of defendant's truck. Debris, which extended all across the highway, was in plaintiff's lane at the entrance to the farm road. At this point the highway is straight in both directions, and visibility to the north is unobstructed for 4/10ths of a mile. In the impact, plaintiff's nose was broken, and he received disfiguring and permanent injuries which impair his breathing. His automobile was a total loss.

Defendant's evidence tends to show: He left his farm between sunset and dark. Only his parking lights were burning. When he came to the highway, he stopped and looked both ways. He saw

plaintiff approaching from the north "150 yards away to possibly 200 yards." Defendant, misjudging plaintiff's speed, started across the road. Plaintiff was driving 60-70 MPH — much faster than he had thought. Plaintiff's automobile struck defendant's truck between the rear wheel and the door when the front wheels were across the center line. In the collision, the truck was overturned and damaged. Defendant received a cut on his forehead and on his knee.

The jury answered the issues in plaintiff's favor, assessing his personal injuries at $12,500.00. The parties had stipulated his property damages. From the judgment entered upon the verdict, defendant appeals, assigning errors.

*Cherry and Cherry by Thomas L. Cherry for plaintiff appellee.*
*Pritchett & Cooke by J. A. Pritchett and Stephen R. Burch for defendant appellant.*

SHARP, J.   Plaintiff alleged and offered evidence tending to show that, after dark, defendant drove a totally unlighted truck from a private drive onto the highway in front of his approaching automobile. Defendant's testimony was that at the time he entered the highway his parking lights were burning. After explaining to the jury the requirements of G.S. 20-129 that during the period from half an hour after sunset to half an hour before sunrise, and at any other time when there is not sufficient light to render clearly visible any person on the highway at a distance of 200 feet ahead, every vehicle upon a highway shall be equipped with lighted front and rear lamps as required by law, the court gave the following instruction, which defendant assigns as error: "I instruct you, gentlemen, that the parking light is not a headlight, and is not a front light, and it is not a rear light, and not a light adapted for the use of driving, but is for the use which its name indicates."

The function of a front light or headlight, defined by G.S. 20-129 and G.S. 20-131, is to produce a driving light sufficient, under normal atmospheric conditions, to enable the operator *to see* a person 200 feet ahead. The function of a parking light is to enable a vehicle parked or stopped upon the highway *to be seen* under similar conditions from a distance of 500 feet to the front of such vehicle.

The real cause of this collision, however, seems to have been the failure of defendant to yield the right of way to plaintiff as required by G.S. 20-156(a). Plaintiff's headlights were burning, and defendant saw him coming at the time he entered the highway. We perceive in the above instruction no prejudice to defendant.

Without objection, defendant testified on cross-examination as follows: "I did not go into the Justice's Court and enter a plea of guilty of failing to yield the right of way before entering the highway. I did not have my son, Norman Perry, to come into court and do this for me. I did not object to it." In recapitulating this evidence in the charge, the judge made the following statement, which defendant assigns as error: "On cross-examination he testified that with his knowledge his son pleaded him guilty before a Justice of the Peace for failing to yield the right of way." Defendant contends that "this is not supported by the record."

In context, and without explanation — and none was forthcoming — defendant's testimony that "he did not object to it" justifies the inference that defendant knew his son had entered a plea for him. If defendant, at that time, had deemed the judge's statement to be inaccurate, he should have called the error to his attention then and there in order to give the court opportunity to make correction. *Manufacturing Co. v. R. R.*, 222 N.C. 330, 23 S.E. 2d 32. This defendant did not do; and his failure waived whatever error, if any, there might have been. *Steelman v. Benfield*, 228 N.C. 651, 46 S.E. 2d 829.

Upon the coming in of the verdict, defendant moved to set it aside because, during the noon recess that day, a juror, G. H. Perry, had walked with plaintiff and his witness Askew from the courthouse to "the barbecue place" for lunch. The record does not show when defendant acquired this information, but plaintiff makes no contention that defendant waived his right to object by failing to make complaint to the court until after verdict. See 89 C.J.S., Trial §§ 455, 483 (1955); Annot., Juror — Contact with Party, 55 A.L.R. 750, 764-65; Supplemental, Annot., 62 A.L.R. 2d 300,330.

The court conducted an immediate inquiry which revealed the following: Juror Perry encountered plaintiff and his witness Askew at the door. Perry shook hands with both and jokingly asked Askew what office he was running for. Plaintiff offered the juror a ride which he declined. The three then walked to lunch together, talking about fishing and corned herring. At one point the juror said, "We have not said one word about the case." Several other jurors and the sheriff also ate lunch at the barbecue place at the same time. Juror Perry did not return to the courthouse with plaintiff and Askew. The juror, whom the sheriff described as a truthful man of good character and reputation, testified that "if (he) had not seen Mr. O'Berry when he left the courthouse (his) opinion would have been the same as it was in the jury box"; that he was "awful sorry anything like that happened"; and that at no time was the case men-

tioned. The judge found that the questioned encounter was casual, and that it had not affected the verdict. He denied the motion.

His Honor understated the matter when he said to the juror, "It would have been better if you had not gone." Not only the parties and their counsel, but also their witnesses, relatives, and friends should refrain from any conduct which casts the slightest suspicion upon the integrity of the trial. They should scrupulously avoid any communication and all social contacts with jurors. Nevertheless, "brief, public, and nonprejudicial conversations between jurors and parties or their relatives will not vitiate the verdict or require that the jury be discharged, and a mistrial is properly denied where the conversation was conceived in innocence and related to a matter entirely foreign to the case." 89 C.J.S., Trial § 457(b) (1955); 53 Am. Jur., Trial §§ 907, 968 (1945).

The impression here is that the encounter between the juror and plaintiff and his witness was accidental; that they were all self-conscious as a result of it; and that they thought the proprieties and the amenities were observed so long as they did not discuss the case. This seems to have been the general understanding for, during the inquiry, the trial judge noted that when he returned to the courtroom after lunch, he had observed one of plaintiff's counsel, the defendant, and four or five jurors sitting together "over there."

Trial judges routinely instruct jurors not to discuss with any person the case they are trying. At every term, however, there are on the panel jurors who have never served before, and, without more, they might not construe this instruction as an injunction to keep strictly aloof from all the participants in the trial. The situation here presented demonstrates the wisdom of an unequivocal instruction to jurors that, insofar as possible, they should refrain from any conversation, and avoid any contact, with all persons involved in the case they are hearing.

The granting or denial of a motion for a mistrial or a new trial because of the alleged misconduct of a juror rests in the sound discretion of the trial judge, and his ruling will be upheld on appeal unless it is clearly erroneous. *Stone v. Baking Co.*, 257 N.C. 103, 125 S.E. 2d 363. In the judge's refusal to set this verdict aside there is no evidence or suggestion of an abuse of discretion. His ruling will not be disturbed.

In the trial we find

No error.