STATE OF NORTH CAROLINA v. TEMPIE MOYE

No. 718SC347

(Filed 18 August 1971)

1. Narcotics § 4— illegal possession — sufficiency of evidence
     The State's evidence was sufficient for submission to the jury in
this prosecution for illegal possession of marijuana.

2. Searches and Seizures § 3— affidavit for search warrant — confidential
informant
     Affidavit of a police officer, based on information supplied by a
confidential informant who had previously given information resulting
in a charge of possession of narcotics and convictions for other crimes,
*held* sufficient under G.S. Ch. 15, Art. 4, to support a magistrate's
finding of probable cause for issuance of a warrant to search defend-
ant's premises for marijuana.

3. Criminal Law §§ 101, 130— misconduct of jurors — denial of motion for
mistrial
     The denial of a motion for a mistrial based on alleged misconduct
affecting the jury is equivalent to a finding by the trial judge that
prejudicial misconduct has not been shown.

4. Criminal Law §§ 101, 128— misconduct of jurors — motion for mistrial
or new trial
     A motion for mistrial or for a new trial on the ground of mis-
conduct of the jurors is addressed to the discretion of the trial judge.

5. Criminal Law §§ 101, 130— news report heard by jurors — reference to
defendant as "dope pusher" — denial of mistrial
     In this prosecution for illegal possession of marijuana, the trial
court did not abuse its discretion in refusing to declare a mistrial when
some of the jurors indicated during the trial that they had heard radio
news reports about the trial in which defendant was referred to as "a
long-time Lenoir County peddler of bootleg whiskey, now dope pusher,"
the trial court having questioned the jurors and found by its denial
of defendant's motion for mistrial that prejudicial misconduct had not
been shown.

APPEAL by defendant from *Copeland, Judge,* 2 November
1970 Criminal Session of Superior Court held in LENOIR County.

Defendant was tried upon a bill of indictment, proper in
form, charging her with the felony of illegal possession of nar-
cotic drugs.

The evidence for the State tended to show that police
officers, armed with a valid search warrant, searched the resi-

State v. Moye

dence of the defendant at 427 Sampson Street in the City of Kinston on 9 October 1970 at about 9:00 p.m. The defendant was the only person there when the officers arrived. The officers found a brown package with a rubber band around it containing 5.5 grams of marihuana in the pocket of a dress in the defendant's bedroom clothes closet.

The defendant's evidence tended to show that if there was any marihuana or "marilla" in the pocket of her dress, the officers put it there. She had never seen any marihuana and did not possess any marihuana.

From a verdict of guilty and a judgment of imprisonment, the defendant appealed to the Court of Appeals.

*Attorney General Morgan and Assistant Attorney General Harris for the State.*

*White, Allen, Hooten & Hines by Thomas J. White and Thomas J. White III for defendant appellant.*

MALLARD, Chief Judge.

[1] Defendant assigns as error the failure of the trial judge to allow her motion for judgment of nonsuit. This assignment of error is overruled. There was ample evidence to require submission of the case to the jury. See *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967).

[2] Defendant also assigns as error the failure of the trial judge to suppress the evidence on the grounds that it was obtained with the use of an invalid search warrant. Defendant contends that the affidavit failed to set forth facts from which the issuing magistrate could properly find probable cause for the issuance thereof.

The affidavit upon which the search warrant was based is as follows:

"Paul W. Young, Lenoir County A. B. C. Officer; (Insert name and address; or if a law officer, then insert name, rank and agency)

being duly sworn and examined under oath, says under oath that he has probable cause to believe that Tempie Moye
(Insert name of Possessor)

has on her premises
(Insert one or more of these phrases: on his premises; in his vehicle; on his person)

certain property, to wit:   Narcotic Drugs
(Describe the property sought)

the possession of which is
(Insert one of these phrases:   the possession of which is; which was used in the commission of;   which constitutes evidence of)

a crime, to wit:

Possession of Narcotic Drugs.   October 9th, 1970, 427 Sampson St. Kinston, N. C.
(Insert name of crime; and date, location — if known)

The property described above is located at 427 Sampson St. Kinston, N. C.
(Insert one of (sic) more of these phrases:

On the premises described as follows:   on the premises; in the vehicle; on the person)

a frame one store building consisting of 3 rooms and bath.
(Unmistakably describe the building, premises, vehicle, or person — or combination — to be searched)

The facts which establish probably (sic) cause for the issuance of a search warrant are as follows: Information furnished by a reliable and confidential informant who states that he has personal knowledge of marihuana being on the above premises at Tempie Moye, 427 Sampson St. Kinston, N. C. This informer has given information in July 1970 and a search was made and narcotic drugs were found and a subject charged with the crime of possession of narcotics. This have (sic) given information on other types of crimes in the years of 1969 and 1970 and his information was found to be true and correct and resulted in convictions of subjects being involved."

We hold that the search warrant, including the attached affidavit, is in substantial compliance with the provisions of Article 4, Chapter 15 of the General Statutes of North Carolina, which was rewritten in 1969 to be effective upon its ratification

on 19 June 1969. See *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971). We think *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S.Ct. 1509 (1964), and the other cases cited by defendant are distinguishable.

[5] The defendant assigns as error the failure of the trial judge to declare a mistrial as a matter of law because defendant contends that eight jurors indicated during the trial that they had heard radio news reports during the trial in which the defendant was referred to by name as a "dope peddler."

On the second day of the trial which was being held in the City of Kinston, in the absence of the jury, the defendant made a motion for a mistrial stating as follows:

"If the court pleases, the defendant's motion for a mistrial is based upon news publicity which has been given narcotics cases in general and this case in particular by Mr. Jack Ryder of H.G.R. Broadcasting Company, Station W.F.T.C. in Kinston, both yesterday morning at about 8:20 a.m. prior to the beginning of the trial of this case, then yesterday at 12:20 p.m. after the trial of this case had been commenced, and yesterday evening at 6:20 p.m. after the jury had been excused for the evening, and then again this morning at 8:20 a.m. on Mr. Ryder's 'Local News and Comment' prior to the reconvening of this court at 10:00 a.m. The first such instance was contained in an editorial, copy of which I have marked as 'Exhibit A' and at this point introduced into evidence, which is entitled 'Editorial November 4, 1970, H.G.R. Broadcasting Company by Jack Ryder,' and which reads as follows: (Defendant's Exhibit A, filed November 5, 1970)

'If anyone has any lingering question about the cause of crime running loose in our nation today it should be answered by just such abuse of common sense as that exhibited in Lenoir County Superior Court Monday in the name of law. . . A pair of 24-carat New Jersey crums were caught by local law enforcement officers and they were found to have more than 30 packages of heroin hidden on their person. . . one had it hidden in a secret compartment in the waistband of his trousers and the other had it tucked in the top of his sock. . . This pair of hiding places came as the result of information for

State v. Moye

which the people of Lenoir County paid $1000 in re-
ward. . . The informer not only told who the crums
were, but where they would be, at what time, the license
number of their car and further told the officers where
the dope would be hidden on these two vermin—both of
whom had gonhorrea in addition to his moral degeneracy
in the peddling of dope to our children here in Lenoir
County. . . But because there was in the opinion of the
Judge some misplaced, or misstated phrase in the search
warrant the officers used when they arrested this pair
the courts have found them not guilty of having heroin
which was found hidden on their person. . . Fortunately
one of the pair had sold some of his heroin to an under-
cover officer and the court did manage to bend over back-
wards and find him guilty and give him a 3-to-5 year
jail term, which means that he will probably be in jail
one fourth of 36 months—unless some santa claus parole
board turns him loose ahead of schedule. . . We do
not need more laws. . . We do not need more
police. . . What we need is different judges. Different
interpretations of the existing laws. . . Now the last
place in the world one can expect to find justice is in
the courts. . . Technicalities every day turn mad-dogs
loose on society and lawyers stuff their pockets with
money they have earned as accessories to the lowest kind
of crime. . . But the lawyers could not stuff their pockets
and the guilty could not walk the streets if we just had
a few. . . not many—just a few judges who would forget
the technicalities and pay some attention to whether the
thugs before them are guilty or innocent. . . To turn
loose on our children a known peddler of the vilest kind
of drugs on such a thin and stupid pretext is a prostitu-
tion of reason, of the law, and our entire civilization. . .
In this the court was more criminal than the criminals
themselves.'

Then, this morning, Mr. Ryder in the news portion of
his editorial referred to the defendant, Mrs. Moye, as 'a
long-time Lenoir County peddler of bootleg whiskey, now
dope pusher' and referred to her case as the one presently
being tried here in our Superior Court. This misconduct
on the part of Mr. Ryder was totally inexcusable, both as
to the attack on the court in his editorial yesterday and as

to his specific comments and accusations directed against this defendant this morning who is presently on trial before this jury. * * * This publicity is grossly prejudicial to her and I see no way now that she can obtain a fair and impartial trial if any members of the jury have heard this publicity directed at her. I would appreciate your Honor inquiring of each of the jurors individually as to whether or not they did hear the editorial yesterday and particularly the news commentary this morning in which Mrs. Moye was specifically referred to by Mr. Ryder."

In Annot., 31 A.L.R. 2d 420, 421, 426 (1953), there appears the following:

"It has been stated that the test in determining whether a new trial, mistrial, or reversal should be granted in a criminal action upon a showing that the jurors had read newspaper accounts of the trial depends upon whether or not a fair trial, under the circumstances, has been interfered with. There is not one rule, however, which defines just what does or does not so interfere. The inquiry, therefore, must center primarily around the facts in each case, and the ultimate decision, as is pointed out in § 3, *infra*, rests in the sound judicial discretion of the court.

*    *    *

On the other hand a newspaper account which is of a tenor to prejudice a party's rights in the minds of the jurors and influence the decision of those who read it has been held to constitute an improper interference with the normal course of justice upon which a ground may be established for setting the verdict aside. * * *

*    *    *

* * * Likewise, the verdict has not been disturbed where the jury could not have honestly and intelligently returned any other verdict than the one it did return.

*    *    *

Thus, in *Babb v. State* (1917) 18 Ariz. 505, 163 P 259, Ann Cas 1918B 925, it was held that a new trial would be granted where jurors had been permitted to read newspaper reports which departed from a fair and honest statement of the evidence and interpreted facts derogatorily and

in a manner likely to excite passion and prejudice on the part of the jury."

In the case of *Marshall v. United States,* 360 U.S. 310, 3 L. Ed. 2d 1250, 79 S.Ct. 1171 (1959), the Supreme Court, in awarding the defendant a new trial in the exercise of its supervisory power, said:

> "The trial judge on learning that these news accounts had reached the jurors summoned them into his chamber one by one and inquired if they had seen the articles. Three had read the first of the two we have listed above and one had read both. Three others had scanned the first article and one of those had also seen the second. Each of the seven told the trial judge that he would not be influenced by the news articles, that he could decide the case only on the evidence of record, and that he felt no prejudice against petitioner as a result of the articles. The trial judge, stating he felt there was no prejudice to petitioner, denied the motion for mistrial.

> The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. *Holt v. United States,* 218 U.S. 245, 251, 54 L. ed. 1021, 1029, 31 S.Ct. 2, 20 Ann Cas 1138. Generalizations beyond that statement are not profitable, because each case must turn on its special facts. We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. Cf. *Michelson v. United States,* 335 U.S. 469, 475, 93 L. ed. 168, 173, 69 S.Ct. 213. It may indeed be greater for it is then tempered by protective procedures."

It has been held that where a jury had been clearly admonished not to read a newspaper account of a trial, a denial of a defendant's request that the jurors be interrogated during the trial as to whether they had read articles appearing in a newspaper about the trial was not an abuse of discretion. *State v. DeZeler,* 230 Minn. 39, 41 N.W. 2d 313 (1950). We think the reading of newspaper accounts and listening to reports

---

State v. Moye

---

of a trial over the radio or television are analogous. In the case before us the judge, in the exercise of his discretion, chose to interrogate the jurors concerning the contents of the defendant's motion. In doing so, the following transpired:

"THE COURT: (To Jurors) : Yesterday afternoon when we took a recess you recall that the court told you at that time that you were not to listen to anything on the radio, or read anything in the newspaper about the case you are trying, or anything along that line. When you were examined yesterday as jurors, you were asked by counsel as to whether you could render a fair and impartial verdict in this case, based on the evidence, charge of the court, and argument of counsel; that is, render a fair and impartial verdict, both for the State and for the defendant. You were also asked if you could give the defendant the benefit of a doubt, that is what in law is called a reasonable doubt which the court will tell you about in the charge. Every one charged with a crime in this country is presumed to be innocent until he is proven guilty beyond a reasonable doubt. The court tells you when he charges you that a reasonable doubt is not a vain doubt, or imaginary doubt, or a fanciful doubt, but it is a sane and rational doubt, a doubt based on common sense.

Now, during this week, and particularly yesterday, it has come to the attention of the court that one of the local news commentators, Mr. Jack Ryder, by name, has seen fit in his editorial of yesterday morning at about 8:30, and another repeat during the middle of the day, and again yesterday afternoon something after 6:00 p.m., to have certain things to say about the operation of the courts with particular regard to crimes somewhat similar to the crime with which the defendant is charged in this case. And again this morning the court is advised that there was something else said about that general subject, about similar type crimes. The only way that a court can function properly is to take the evidence from the witnesses while they are on the stand; that is the only way a jury can properly function; and the only way they can take the law is to take it from the court, and when the court rules on matters in the course of a trial and charges the jury. And based on those things, plus the contentions of the lawyers and their argu-

ments to you, render a fair and impartial verdict for the State and the defendant.

That does not disturb me personally that Mr. Ryder has had something to say about me, that is neither here nor there. If I wasn't thick-skinned I wouldn't be here. This court is just going to do its duty under the law.

But, the question arises at this time as to whether or not anybody has listened to his editorials or read anything in the newspaper (if there has been anything in the newspaper about it—I don't know if there has). First, I would like to inquire of the jury at this time as to whether anybody listened to any of these editorials yesterday or this morning, at the times the court has related, and I will have to ask you one at the time. After that I may have to ask you some other questions. So, Mrs. Mayo, if you will call the name of each juror I will ask that question.

(Each juror questioned as follows) :

Q. Whether or not you have listened to any of these editorials as of yesterday or this morning?

Q. Did you create any impression in your mind?

Q. Do you think that it prejudiced you against the defendant in any way?

Q. So you say that regardless of anything you may have heard or read that you can render a fair and impartial verdict, both for the State and the defendant in this case?

Eight (8) jurors indicated to the court that they had either heard the editorial November 4, or Mr. Ryder's comments specifically as to the defendant this morning prior to coming to court.

THE COURT (Con't.) : Now to the eight I have just spoken to, I take it that none of you have expressed any opinion this week about the guilt or innocence of anybody who was here for trial pertaining to these types of crime. I assume that nobody has?

None of the jurors made any reply.

Now I take it that, taking the evidence from the witnesses on the stand, plus the contentions of the lawyers and their arguments, and taking the law from the court, you can render a fair and impartial verdict both for the State and the defendant?

All the jurors nodded their heads.

MOTIONS OF DEFENDANT OVERRULED.

DEFENDANT'S EXCEPTION NO. 7.

THE DEFENDANT OBJECTS AND EXCEPTS TO HIS HONOR'S MANNER OF INTERROGATING THE JURORS.

DEFENDANT'S EXCEPTION NO. 8."

It appears from the record that Judge Copeland had admonished the jurors not to listen to anything on the radio, or read anything in the newspaper *about the case they were trying*. It further appears that some of the jurors (the record does not reveal how many) did not heed this admonition. It is noted that the quoted editorial alleged to have been broadcast on the preceding day did not specifically refer to the defendant's case. The full contents of the editorial asserted to have been broadcast on the morning of 5 November 1970 referring specifically to the defendant, who was then being tried, as "a long-time Lenoir County peddler of bootleg whiskey, now dope pusher" is not set out in the motion or elsewhere in the record. Neither does the record before us contain the answers of the jurors to the questions propounded by the court. The interrogation of the jurors appears in summary form, and their answers can only be inferred.

In 39 Am. Jur., New Trial, § 95, p. 109, it is said:

"The law contemplates that no outside influences shall be brought to bear upon a jury impaneled to try a case, and where it appears that the jury has been subjected to extra-judicial influences or suggestions, upon the part of a party or his counsel, the judge, or any third person, during the pendency of the case which they are sworn to try, a new trial may be granted unless it appears that no prejudice resulted from such misconduct. An impartial jury, selected and kept free from all outside or improper influences, has always been regarded as necessary to a fair and impartial

State v. Moye

trial; and anything not legitimately arising out of the trial of the case, which tends to destroy the impartiality of the juror, should be discountenanced. It is said that where it is made to appear that anything has occurred which may have improperly influenced the action of the jury in a criminal case, the accused will be granted a new trial, although he may appear to be guilty, because it may be said that his guilt has not been ascertained in the manner prescribed by law. When a juror enters upon the trial of a criminal case, the law contemplates his withdrawal from the public and makes no provision for addresses to him from outside sources, for his entertainment or otherwise, which are calculated directly or indirectly to excite any passions or emotions with respect to the matter upon which he is to sit in judgment."

[3] The denial of a motion for a mistrial based on alleged misconduct affecting the jury is equivalent to a finding by the trial judge that prejudicial misconduct has not been shown. 3 Strong, N. C. Index 2d, Criminal Law, § 130 (1971 Supplement); *State v. Sneeden,* 274 N.C. 498, 164 S.E. 2d 190 (1968). In the case of *State v. Shedd,* 274 N.C. 95, 161 S.E. 2d 477 (1968), it is said:

"The burden is on the appellants not only to show error but that the alleged error was prejudicial and amounted to the denial of some substantial right."

In the case at bar the trial judge found that prejudicial misconduct had not been shown by denying the motion for a mistrial.

The defendant contends, however, that the trial judge, as a matter of law, was required to declare a mistrial. The case of *State v. Tilghman,* 33 N.C. 513 (1850), seems to support that position. Justice Pearson (later Chief Justice), in writing the opinion of the Court, made a distinction between a cause for a new trial and a cause for a mistrial, holding that granting the former is a matter of discretion and the latter is a matter of law. The case involved misconduct of the jury, among other things, by failing to heed the admonitions of the court as to their conduct during recesses of the court. In holding there was no error, it is there said:

" * * * We take this plain position: if the circumstances are such as merely to put suspicion on the verdict by showing, not that there *was*, but that there might have been undue influence brought to bear on the jury, because there was opportunity and a chance for it—it is a matter within the discretion of the presiding judge. But if the fact be that undue influence was brought to bear on the jury, as if they were fed at the charge of the prosecutor or of the prisoner, or if they be solicited and advised how their verdict should be, or if they have other evidence than that which was offered on the trial, in all such cases there has in contemplation of law been no trial; and this Court, as a matter of law, will direct a trial to be had, whether the former proceeding purports to have acquitted or convicted the prisoner."

See also *State v. Perry,* 121 N.C. 533, 27 S.E. 997 (1897), where jurors in a rape case visited the scene of the crime, without permission, questioned a passerby, and while there discussed the case among themselves. The superior court judge refused to set aside the verdict. In awarding a new trial because the jury elicited other evidence than that offered on the trial, the Supreme Court quoted with approval from *State v. Tilghman, supra.*

[4] The distinction made by Justice Pearson in *Tilghman* in holding that a cause for a new trial is discretionary and a cause for a mistrial is a matter of law is no longer made. The law now is that motions for mistrial, or a new trial, on the grounds of misconduct of the jurors is addressed to the discretion of the trial judge.

In *State v. Sneeden, supra,* Justice Huskins, speaking for the Court, said:

"Motions for mistrial or a new trial based on misconduct affecting the jury are addressed to the discretion of the trial court. *In re Will of Hall,* 252 N.C. 70, 113 S.E. 2d 1. Unless its rulings thereon are clearly erroneous or amount to a manifest abuse of discretion, they will not be disturbed. *Stone v. Baking Co.,* 257 N.C. 103, 125 S.E. 2d 363; *O'Berry v. Perry,* 266 N.C. 77, 145 S.E. 2d 321; *Keener v. Beal,* 246 N.C. 247, 98 S.E. 2d 19. 'The circumstances must be such as not merely to put suspicion on the

verdict, because there was opportunity and a chance for misconduct, but that there was in fact misconduct. When there is merely matter of suspicion, it is purely a matter in the discretion of the presiding judge.' *Lewis v. Fountain,* 168 N.C. 277, 279, 84 S.E. 278, 279."

In the case of *State v. Shedd, supra,* Chief Justice Parker said:

"The trial judge is clothed with power of discretion as to whether he should order a mistrial or set aside a verdict by reason of alleged misconduct of a juror or jurors 'because of his learning and integrity, and of the superior knowledge which his presence at and participation in the trial gives him over any other forum. However, great and responsible this power, the law intends that the Judge will exercise it to further the ends of justice, and though, doubtless it is occasionally abused, it would be difficult to fix upon a safer tribunal for the exercise of this discretionary power, which must be lodged somewhere.' *Moore v. Edmiston,* 70 N.C. 471."

In *State v. Suddreth,* 230 N.C. 239, 52 S.E. 2d 924 (1949), the defendant was being tried for murder. One of the jurors permitted a sister of the victim to ride with him in his car while the case was in progress. The juror stated under oath that he did not know of the relationship. After a thorough investigation, the trial judge found that there were other people in the car with them at the time, the case was not discussed, the result of the case had not been affected thereby, and declined to set aside the verdict either as a matter of law or in his discretion. In holding that there was no error, the Supreme Court said:

"It is provided by statute, G.S. 9-14, that the judge 'shall decide all questions as to the competency of jurors,' and his rulings thereon are final and 'not subject to review on appeal unless accompanied by some imputed error of law,' *S. v. DeGraffenreid,* 224 N.C. 517, 13 S.E. 2d 523; *S. v. Hill,* 225 N.C. 74, 33 S.E. 2d 470; *S. v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686. This exception presents no reviewable question of law and will not be sustained."

In *State v. Kinsauls,* 126 N.C. 1095, 36 S.E. 31 (1900), the jurors, who had been sequestered, attended church services with

the defendant's consent. The preacher urged the jury to be careful, and if the defendant was guilty to say so and if not to say so. He also told them to do their duty. In his prayer, the preacher prayed for a fair and impartial trial. The Supreme Court held that this did not constitute misconduct of the jury prejudicial to the defendant.

In 5 Am. Jur. 2d, Appeal & Error, § 889, it is said:

"The determination of the existence and effect of jury misconduct is primarily for the trial court, whose decision will be given great weight on appeal."

In the case of *State v. Hart,* 226 N.C. 200, 37 S.E. 2d 487 (1946), the court officer who was placed in charge of the jury was a witness for the State. The trial judge refused to set aside the verdict and order a new trial on that grounds. In holding that there was no error, the Supreme Court said:

" * * * It is our opinion, and we so hold, that actual prejudice must be shown before the result of the trial can be, as a matter of right, disturbed.

In North Carolina, in instances when the contention was made by the defendant that the jury has been improperly influenced, it has been held that it must be shown that the jury was actually prejudiced against the defendant, to avail the defendant relief from the verdict, and *the findings of the trial judge upon the evidence and facts are conclusive and not reviewable. S. v. Hill,* 225 N.C., 74, 33 S.E. (2d), 470; *S. v. DeGraffenreid,* 224 N.C., 517, 31 S.E. (2d), 523." (Emphasis added.)

It is regrettable that news reporters at times add to or distort court proceedings. Sometimes zealous reporters are unable to discipline themselves in order to preserve the proper nicety of discrimination as to what should be published by ethical news media concerning a trial in order to keep from interfering with a defendant's constitutional right to a fair trial. The power of the spoken and printed word in the news media is evidenced by the fact that advertisers pay to advertise therein. Therefore, the news media ought not to, and do not ethically, use the power of the news media to deprive any accused person of his basic constitutional right to a fair trial. In this connection we quote with approval the following words

of Judge Haynsworth of the United States 4th Circuit Court of Appeals in the case of *Holmes v. United States,* 284 F. 2d 716 (1960):

> "When, shortly before and during a trial, public news media irresponsibly publish incompetent and prejudicial information, the difficulty of maintenance of fairness in the administration of justice is manifest."

In the case before us, after making such investigation as he deemed to be necessary and after questioning the jurors, the trial judge did not declare a mistrial and did not cite the jurors for contempt for disobeying his admonition not to listen to anything on the radio or read anything in the newspaper about the case but overruled the defendant's motion for a mistrial. Defendant had requested that the jurors be questioned. Her objection to the manner the court interrogated the jurors is overruled.

[5]  One of the basic and absolutely necessary ingredients of political freedom is the unqualified right to a fair and public trial by a legally constituted court, presided over by a fair and impartial judge, and being represented by competent counsel, with one's guilt or innocence determined by a fair and impartial jury under modes of procedure established by lawful authority. In the case at bar the defendant was tried by a legally constituted court, presided over by a fair and impartial judge, represented by able, experienced and competent counsel. Her guilt was determined under established modes of procedure by a jury found to be fair and impartial. Upon the facts in the record in this case, it is our opinion, and we so hold, that the learned judge who presided at this trial had large discretion as to whether he should order a mistrial, and he was not required as a matter of law to order a mistrial.

We quote with approval the following from *State v. Tilghman, supra:*

> " * * * Perhaps it would have been well had his Honor in his discretion set aside the verdict and given a new trial, as a rebuke to the jury and an assertion of the principle that trials must not only be *fair, but above suspicion.* This, however, was a matter of discretion * * * ."

In the case at bar, actual prejudice has not been shown, and no abuse of discretion on the part of the judge appears.

In the trial we find no error.

No error.

Judges CAMPBELL and HEDRICK concur.