STATE OF NORTH CAROLINA v. IRA JEFFERIES

No. 7222SC695

(Filed 25 October 1972)

1. Criminal Law §§ 113, 114— jury charge in compliance with G.S. 1-180

The trial court's instruction in a murder prosecution complied with G.S. 1-180 where it explained the law arising on the evidence, it correctly defined each element of the crimes of second degree murder and manslaughter, it explained the law of self-defense, it did not amount to a comment on the evidence, and it properly failed to define proximate cause.

2. Criminal Law § 77— admissibility of self-serving statements

The trial court did not err in excluding testimony of an investigating officer as to statements made to him by defendant concerning circumstances surrounding the shooting for which defendant was on trial since such statements were self-serving declarations of defendant.

3. Criminal Law § 102— jury argument

Defendant was not prejudiced by the solicitor's argument to the jury where statements he read had already been testified to by defendant and where the court sustained defendant's objections to the argument and instructed the jury not to consider the argument to, which objection had been sustained.

**4. Criminal Law § 169— objections to questions sustained — motion for mistrial properly denied**

Where improper questions were propounded by the solicitor to defense witnesses, defendant objected, and the trial judge sustained the objection and instructed the jury to disregard the questions, any impropriety was cured; therefore, defendant's motion for mistrial was properly denied.

**5. Criminal Law § 42— murder prosecution — admissibility of gun found on body of deceased**

It was not prejudicial for the Court to allow testimony as to the condition of a pistol found on the body of deceased in a murder prosecution, since any object which has a relevant connection with a case is admissible.

APPEAL by defendant from *Lupton, Judge,* 8 November 1971 session of Superior Court held in DAVIDSON County.

Defendant, Ira Jefferies, was tried on a bill of indictment, proper in form, for the murder of Howard Lee Thomas. Upon defendant's plea of not guilty, the State offered evidence tending to show:

The deceased, Howard Lee Thomas, died of a gunshot wound which was inflicted at the home of Mrs. Hester Mae Mock. The bullet entered his back, to the left of the midline, and lodged inside the chest near the windpipe. Death resulted from internal hemorrhage. The alcohol content found in the blood sample taken from the body of the deceased on the morning of 28 November 1970, was .340 milligrams.

The defendant was in the home of Mrs. Hester Mae Mock, together with relatives and friends, on the evening of 27 November 1970. At approximately 9:30 p.m. the deceased came to the Mock residence, knocked on the door and demanded entry. Mrs. Mock refused to allow Thomas to enter her home and requested that he leave. Thomas continued to knock on the door and demanded to see defendant, Ira Jefferies, saying that ". . . he had some stuff for him". Defendant, Ira Jefferies, went onto the porch to ask Thomas to leave. From his position in the yard, Thomas lunged at Jefferies' leg. Defendant picked up a chair with which he attempted to strike Thomas. When Thomas reached in his pocket, defendant shot him.

When officers from the Davidson County Sheriff's Department arrived at the Mock residence at approximately 12:40 a.m., 28 November 1970, they found the deceased lying in the

yard on his back. An unloaded .32 caliber Hopkins-Allen pistol was found in the deceased's right front pocket. While Captain Stabler was examining the body, defendant walked up to him, handed him a .22 caliber PIC pistol, and stated: "I'm the one that did the shooting."

Defendant, Ira Jefferies, testified that on the evening of 27 November 1970 he and three companions went to Winston-Salem and purchased two six packs of beer. When they returned, they went to the mobile home of defendant's brother-in-law, William Rogers Mock. The men were listening to records when Thomas came to the mobile home and was let in by the defendant. Soon, thereafter, Thomas became profane and abusive and defendant asked him to leave. Within a few minutes, Thomas returned, apologized for his earlier profanity and defendant let him reenter the mobile home. Upon entering the mobile home, Thomas pulled out a pistol and again became profane. Defendant repeatedly asked Thomas to leave, but Thomas refused. Defendant then walked to a rear room in the mobile home, removed his brother-in-law's pistol from a drawer, and placed it in his pocket. Everyone then left the mobile home. Thomas walked toward his truck and defendant and his three companions walked to the home of Hester Mae Mock, defendant's mother-in-law. Within a few minutes, Thomas knocked at the door and requested entry. Mrs. Mock refused to allow Thomas to enter. Thomas began to curse and to beat on the door, the screen and the window. Several of the guests in Mrs. Mock's home asked Thomas to leave, but he refused. Repeatedly, Thomas stated that he had some "stuff" for defendant, Ira Jefferies. When defendant walked onto the porch to ask Thomas to leave, Thomas lunged at defendant and grabbed defendant's leg with his left hand. Thomas put his right hand into his right front pocket and stated, "I have got some damn stuff for you." Defendant believed that Thomas was going to shoot him. Defendant picked up a chair with his left hand and swung it at Thomas, causing Thomas to spin. With his right hand, defendant removed a pistol from his right rear pocket and fired it at Thomas.

The jury found the defendant guilty of manslaughter. From a judgment imposing an active prison sentence of 8 to 12 years, defendant appealed.

*Attorney General Robert Morgan and Assistant Attorney General Henry T. Rosser for the State.*

*T. H. Suddarth, Jr., for defendant appellant.*

HEDRICK, Judge.

[1] The defendant contends the Court committed prejudicial error in failing to comply with the mandate of G.S. 1-180 by:

1. Not declaring and explaining the law arising on the evidence;

2. Declaring and explaining law not arising on the evidence;

3. Failing to state the evidence to such extent as is necessary to apply the law thereto;

4. Commenting on the evidence;

5. Failing to define proximate cause.

We have carefully examined the Court's instructions to the jury in the light of each exception noted in the record. The Court fairly, adequately and correctly declared and explained the law arising on the evidence. The Court carefully and correctly defined each element of the crimes of second degree murder and manslaughter. The Court carefully and correctly explained the law of self-defense and correctly applied it to the evidence in the case.

There is nothing in the record to support defendant's contention that the Court commented on the evidence in violation of the provisions of G.S. 1-180.

Under the circumstances of this case there was no necessity that the Court define proximate cause. There was evidence tending to show that the defendant shot the deceased. On cross examination, defendant testified, "I don't know how old Howard Lee Thomas was when I killed him" and "This pistol I shot him with I had in my right rear pocket." There was evidence tending to show that deceased came to his death as a result of a bullet wound. There was no evidence or suggestion that anyone other than the defendant fired a gun or that the deceased came to his death as a result of any wound or injury other than that inflicted by the defendant. These assignments of error have no merit.

**[2]** Defendant contends the Court erred in excluding ". . . statements of the defendant explaining the circumstances surrounding the fatal encounter." This contention is based on the Court's refusal to allow Captain Stabler on cross examination to testify as to statements made to him by defendant as to the circumstances surrounding the shooting of the deceased. The testimony was properly excluded as being self-serving declarations of the defendant. Moreover, the substance of the excluded testimony subsequently was offered and admitted into evidence. This assignment of error is without merit.

**[3]** Defendant contends the Court committed prejudicial error by allowing the solicitor to read:

" . . . to the jury a paper writing purporting to be an admission of the defendant having therefore been excluded from the evidence by the Court, by improper questions getting before the jury by innuendo and insinuation evidence not otherwise admissible and other incidents of conduct calculated to unduly prejudice the jury."

From the record before us it is not clear to what "paper writing" the defendant has reference. No paper writing purporting to be a confession was offered into evidence. With respect to the solicitor's reading to the jury during his argument, the record is as follows:

"You heard the defendant himself on that stand when I cross-examined him, what he said, that he came off the steps—'I'm the one that did the shooting.' 'What happened?' Capt. Stabler said. 'I'm not talking until I talk with my lawyer.'

OBJECTION. SUSTAINED.

COURT: Don't consider that.

MR. ZIMMERMAN: Then he comes to the jail and gets in and tells this—'Howard kept beating on the door and Hester told him to leave; then I asked him to leave and he wasn't going to.' I asked him did he say that; he said No, he didn't say that, he said a lot of other things. (reading resumed) 'I went back out on the porch again; she went out and led him off the porch to the truck—Hester, and he came back beating on the door again.' He said he might have said that. Then (reading)—'My wife went

out and asked him to leave; then I went out again and told him to go on; he ran his right hand in his pocket and hit at me with his left hand'—

OBJECTION SUSTAINED.

MR. SUDDARTH: The defendant tried to get this in evidence and never was permitted to.

MR. ZIMMERMAN: I cross-examined him on each and every word.

MR. SUDDARTH: He denied it and the part he admitted is the only thing in evidence.

MR. ZIMMERMAN: (reading) I hit him with a chair—

COURT: Don't argue any of the alleged part except the part admitted on the stand.

MR. ZIMMERMAN: (reading) 'I hit him with a chair; then he spun around. He still had his hand in his pocket and I shot him. Earlier tonight at William Rogers Mock's trailer Howard Lee showed me his gun; it was a small pistol, and I didn't know if it was loaded or not. I had been carrying my pistol all along.'

OBJECTION SUSTAINED.

COURT: Don't consider that, Members of the Jury."

The defendant seems to contend that the solicitor read to the jury from a statement prepared by Captain Stabler from his conversation with the defendant as to the circumstances surrounding the shooting. The record discloses that the defendant, without objection on cross examination, testified to each statement apparently read to the jury by the solicitor. It seems equally clear that the solicitor may have been reading from his own notes prepared during the trial. In any event, we do not perceive how the defendant could have been prejudiced since the trial judge sustained the defendant's several objections to the argument, told the solicitor not to argue anything "except the part admitted on the stand," and cautioned the jury not to consider the argument to which objection had been sustained.

In support of his contention that the defendant was prejudiced in the minds of the jury by the improper conduct of the

solicitor, the defendant refers us to numerous statements made by the solicitor in his argument to the jury. The record reveals that in every instance to which the defendant alludes where the defendant interposed objection, the trial judge sustained the objection and instructed the jury to disregard the comment. In other instances urged by the defendant as error, it appears that defendant failed to object. These exceptions were lost to defendant. *Reeves v. Hill,* 272 N.C. 352, 158 S.E. 2d 529 (1968). In *State v. Maynor,* 272 N.C. 524, 526, 158 S.E. 2d 612, 613 (1968), it is stated:

> "Wide latitude is given to counsel in argument. The judge hears the argument, knows the atmosphere of the trial and has the duty to keep the argument within proper bounds. His rulings will not be disturbed unless abuse of privilege is shown and the impropriety of counsel was gross and well calculated to prejudice a jury." (citations omitted)

We have examined all of the questions, statements and comments complained of and find that the rulings of the trial judge were proper and that the alleged impropriety of the solicitor's argument was not gross and calculated to prejudice the jury.

[4] Defendant next contends the trial court committed prejudicial error "by abusing its discretion in not granting the defendant's motion for a mistrial."

Defendant premised his motion for mistrial on two allegedly improper questions propounded by the solicitor to defense witnesses. In each instance the trial judge sustained defendant's objection to the question and instructed the jury to disregard the question asked by the solicitor. This prompt action of the trial judge cured any impropriety. In 2 N.C. Index 2d, Criminal Law, § 102 (1967), it is stated: ". . . an impropriety must be sufficiently grave to be prejudicial in order to entitle defendant to a new trial. It is only in extreme cases of abuse of the privilege of counsel, and when the trial court does not intervene or correct an impropriety, that a new trial may be allowed."

The trial court has broad discretion in entertaining motions for mistrial. Absent a manifest abuse of discretion or rulings which are clearly erroneous, the rulings of the trial court will not be disturbed. *State v. Sneeden,* 274 N.C. 498, 164 S.E. 2d 190 (1968) ; *O'Berry v. Perry,* 266 N.C. 77, 145 S.E. 2d 321 (1965) ; *Stone v. Baking Co.,* 257 N.C. 103, 125 S.E. 2d 363

(1962) ; *State v. Moye,* 12 N.C. App. 178, 182 S.E. 2d 814 (1971). This assignment of error is overruled.

Defendant assigns as error the denial of his timely motions for judgment as of nonsuit. There was ample evidence to require submission of this case to the jury and to support the verdict.

[5]   Defendant's next assignment of error challenges the trial court's allowing testimony, over defense objections, as to the condition of the pistol found on the body of the deceased. Any object which has a relevant connection with a case is admissible. Stansbury, North Carolina Evidence 265 § 118 (2d ed. 1963). There was evidence tending to show that the deceased had a pistol and that Officer Stabler found the pistol in the deceased's pocket. This pistol was properly admitted into evidence as State's exhibit #7. It was not prejudicial error for the Court to allow testimony as to the condition of the pistol when it was taken from deceased's body.

The defendant has additional assignments of error which we have carefully considered and find to be without merit. We hold the defendant had a fair trial free from prejudicial error.

No error.

Judges BROCK and MORRIS concur.