STATE OF NORTH CAROLINA v. TERRY BRUCE BALDWIN

No. 8229SC667

(Filed 19 April 1983)

**1. Kidnapping § 1.2— purpose of terrorizing victims—sufficiency of evidence**

   The State's evidence was sufficient for the jury to find that defendant unlawfully confined, restrained and removed three young men from one place to another for the purpose of terrorizing them so as to support defendant's conviction of three charges of kidnapping where it tended to show that the three victims had car trouble at midnight and were waiting for the father of one of them to pick them up; defendant told the victims that he was "a bad dude" and told the oldest victim to come over to his car and have a beer with him; when the oldest victim declined, defendant told him to get out of the car and do as he was told or he would kill all three of them; when the oldest victim went to defendant's car, defendant pulled him into the car and drove him across the street; defendant and the oldest victim then got out of defendant's car and walked back to the victims' vehicle; defendant told the other two victims that if they tried to run and he caught them, he would kill them; defend-

ant then pushed the oldest victim into the victims' car, got in himself, succeeded in starting the car, and drove the car with all three boys in it about a quarter of a mile; defendant then stopped and stated that the victims had been lying about their car trouble and that he was going to put all three of them in the hospital; at that point, the two younger victims jumped out of the car and ran off in different directions looking for help; defendant then drove off with the oldest victim and traveled several miles into the country, during the course of which he slapped such victim's face several times with his open hand; upon approaching a bridge, defendant told the oldest victim that he would "throw him over it," whereupon the victim opened the door and escaped while the car was still moving; and the victims were all smaller and younger than defendant.

**2. Criminal Law § 114.2— instructions—no expression of opinion**

The trial court's instruction on the jury's duty to find defendant guilty of kidnapping "if you find" that "this was done for the purpose of terrorizing [the victim] by threatening to throw him out of the automobile from a bridge, threatening to kill him, put him in the hospital or by hitting him in the face" did not constitute an expression of opinion that defendant's purpose to terrorize would be established if the jury found that defendant made threatening statements but required the jury to determine not only whether the threats were made but also whether they manifested a purpose to terrorize.

**3. Kidnapping § 1— indictment for first degree kidnapping**

An indictment was insufficient to charge defendant with first degree kidnapping where it failed to allege that the victim was either not released by defendant in a safe place, was seriously injured, or was sexually assaulted. G.S. 14-39(b).

APPEAL by defendant from *Owens, Judge.* Judgment entered 8 December 1981 in Superior Court, HENDERSON County. Heard in the Court of Appeals 12 January 1983.

A jury found the defendant guilty of one count of first degree kidnapping, two counts of second degree kidnapping, and unauthorized use of a conveyance. Only the kidnapping convictions were appealed. The State's evidence, in gist, was as follows:

On the evening of August 29, 1981, Terry Stamey, Mike Wines, and Jim Kuykendall, who lived at Canton in Haywood County, drove to Hendersonville, about 35 miles away, to watch a football game. Stamey was 19 years old, 5 feet tall and weighed 110 pounds; Wines was 16, stood 5 feet 6 inches and weighed 125 pounds; Kuykendall, only 13, was 5 and ½ feet tall and weighed 150 pounds. After the game, around midnight, while still in Hendersonville, they had car trouble and stopped at a convenience store, where Stamey telephoned his father in Canton to come after them. As they waited for Stamey's father, a car con-

taining the defendant, another male, and two females pulled into the store parking lot. The two males purchased beer while the females talked briefly with the three teens about the football game, then all four drove away.

About thirty minutes later, defendant returned alone in his car, which he parked beside Stamey's car. Defendant, who was 26 years old, nearly 6 feet tall and weighed 168 pounds, apparently assuming that the boys were waiting for the two females to return, belligerently, with some obscenities, told them that the girls would not be coming back and that he was "a bad dude." He then told Stamey to come over to his, the defendant's, car and have a beer with him. When Stamey declined, defendant told him to get out of the car and do as he was told or he would kill all three of them. Upon Stamey's going to defendant's car and asking defendant to let him stand beside the car, instead of getting in it as defendant directed, defendant pulled him into the car and drove him across the street.

The defendant and Stamey then got out of the car and walked back across the street to Stamey's vehicle. As they did so, Wines and Kuykendall, who had been sitting in Stamey's car, started to get out. Defendant told them that if they tried to run and he caught them, he would kill them. Defendant then pushed Stamey into the car, got in himself, succeeded in starting it up, and drove Stamey's car with all three boys in it about a quarter of a mile. Defendant then stopped and stated that the boys had been lying about their car trouble and that he was going to put all three of them "in the hospital." At that point, Wines and Kuykendall jumped out of the car and ran off in different directions looking for help.

Despite Stamey's protestations that he didn't want to be separated from the other two, since he was responsible for getting them home, defendant then drove off with Stamey and traveled several miles into the country, during the course of which he slapped Stamey's face several times with his open hand. Upon approaching a bridge and telling Stamey that he would "throw him over it," Stamey opened the door and jumped out on the ground, even though the car was moving about 20 M.P.H. Stamey ran through the woods until he came to a house, raised the occupants, and they called the police, which had already been

called on behalf of the other two boys. All the boys appeared to be and said they were very scared and upset.

*Attorney General Edmisten, by Assistant Attorney General Marilyn R. Rich, for the State.*

*Appellate Defender Stein, by Assistant Appellate Defender Marc D. Towler, for the defendant appellant.*

PHILLIPS, Judge.

Under G.S. § 14-39(a), unlawfully confining, restraining, or removing a person from one place to another without the consent of such person is kidnapping if one of the purposes of such confinement, restraint or removal is for the purpose of "terrorizing the person so confined, restrained, or removed. . . ." It is under that part of the statute that defendant was indicted, tried and convicted.

[1] Defense counsel stoutly contends—and has at every opportunity since the State rested—that the evidence does not suffice to show that defendant's purpose was to terrorize these youngsters and that the case against him should therefore be dismissed. Bearing in mind the oft-cited rules that we are obliged to follow in matters of this kind, a repetition of which here would be superfluous, we disagree.

Gratuitously accosting three smaller and younger boys in a strange, unprotected place at midnight, belligerently telling them what a rough character he was, ordering them to move or not move as he saw fit, taking over the operation of their car, and threatening to kill or send all of them to the hospital if they did not do his bidding, as the State's evidence tended to show happened, was basis enough, we think, for the jury finding that defendant's purpose was to terrorize all of them.

But those were just the circumstances that existed before two of the three youngsters escaped defendant's control. The circumstances that defendant created thereafter, according to the State's evidence, make it even more likely that defendant's purpose was as charged. By then, so the State's evidence tends to show, defendant knew that the two younger boys were frightened sufficiently to jump from the car and dash wildly off into the night and that Stamey was sufficiently cowered to have done his

bidding from the outset. Yet, instead of attempting to allay Stamey's fears, by telling him that he was just joking and joining Stamey in finding the other boys and demonstrating that no harm was intended, as one with an innocent purpose might be expected to do under such circumstances, the State's evidence shows that defendant thereafter dragged Stamey into the front seat of his car, drove away over his protests, slapped him in the face twice, traveled several miles into the country, and told Stamey that he was going to throw him off a bridge.

That defendant apparently had no weapon and may even have been incapable of fully carrying out his threats, particularly while the three boys were still together, did not require an acquittal, as the defendant contends. Since the crime defendant was convicted of did not involve a purpose to kill or maim, but a purpose to terrorize, *State v. McRae*, 58 N.C. App. 225, 292 S.E. 2d 778 (1982); *State v. Jones*, 36 N.C. App. 447, 244 S.E. 2d 709 (1978), that is the capacity that the jury had to consider, along with the way that that capacity was used. And as the record plainly shows, in concluding that the defendant did have the capacity to terrify these youngsters and used it for that purpose, the jury was not without justification.

[2] Defendant also cites the following part of the Court's charge to the jury (and others like it when charging on the other indictments) as being an expression of opinion about a disputed fact, and thus violative of G.S. 15A-1212:

So I charge you that if you find from the evidence beyond a reasonable doubt that on or about August 29th, 1981, the defendant Terry Bruce Baldwin, unlawfully removed Terry Douglas Stamey from a fast food place in Hendersonville and carried him in an automobile and that Terry Douglas Stamey did not consent to this removal *and that this was done for the purpose of terrorizing Terry Douglas Stamey by threatening to throw him out of the automobile from a bridge, threatening to kill him, put him in the hospital or by hitting him in the face,* and that Terry Douglas Stamey was not released in a safe place, it would be your duty to return a verdict of guilty of first degree kidnapping of Terry Douglas Stamey . . . . [Emphasis added.]

The defendant contends that by these words the Judge in effect told the jury that if they found that the defendant made the threatening statements attributed to him that the defendant's purpose to terrorize would be established thereby. We think otherwise. The instruction is in the usual form approved by many decisions of our Supreme Court and is in keeping with the Pattern Instructions adopted by the North Carolina Conference of Superior Court Judges. The usual "if you find" that the instruction starts out with manifestly applies to each of the phrases that follow it, including the purpose to terrorize phrase; and we are satisfied that the jury understood from it that none of the possible facts stated therein had already been established, but that all of them were for their consideration and determination.

[3]  But defendant's contention that the indictment charging him with the first degree kidnapping of Terry Stamey is insufficient to support a conviction of that offense is well taken. Paragraph (b) of N.C. Gen. Stat. 14-39 provides as follows:

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released . . . in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class D felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

Thus one of the essential elements of first degree kidnapping is that the person kidnapped was either not released by the defendant in a safe place, was seriously injured, or was sexually assaulted. Yet this element is not mentioned in the indictment. Since there was no serious injury or sexual assault, and the State's case was that Stamey wasn't released at all, but escaped, it might appear at first blush that alleging that he was not released in a safe place was unnecessary; but our law is otherwise. No indictment is sufficient if it does not accurately and clearly allege *all* the essential elements of the charged offense. *State v. Perry*, 291 N.C. 586, 231 S.E. 2d 262 (1977); *State v. King*, 285 N.C. 305, 204 S.E. 2d 667 (1974).

But since the indictment does accurately and clearly charge all the elements of kidnapping in the second degree, we are of the opinion that the case should be remanded for entry of judgment as on a verdict of guilty of that offense. This course has been approved in previous cases and cannot prejudice the defendant, since the evidence is not only sufficient to establish that offense, but the higher one as well. *See,* for example, *State v. Dawkins,* 305 N.C. 289, 287 S.E. 2d 885 (1982).

Remanded for judgment.

Judges WEBB and BECTON concur.