STATE OF NORTH CAROLINA v. RONNELL LEVERNE JACKSON

No. 8521SC162

(Filed 29 October 1985)

1. Criminal Law § 29.2— mental capacity to stand trial—jurisdiction to enter commitment order

The superior court, rather than the district court, had authority to enter a commitment order under G.S. 15A-1002 to determine defendant's capacity to stand trial even though indictments had not yet been returned. Furthermore, any impropriety in the entry of such an order by one judge without notice to defendant or his counsel was rendered harmless by a second judge's order entered after defendant and his counsel had notice and an opportunity to be heard concerning the commitment.

2. Criminal Law § 5— notice of insanity defense—inherent power to require submission to mental examination

When a criminal defendant gives notice that he will raise insanity as a defense to the charges against him, the trial court has the inherent power to require the defendant to submit to a mental examination by a state or court-appointed psychiatrist for the purpose of inquiring into his mental status at the time of the alleged offense.

3. Constitutional Law § 74; Criminal Law § 5.1— expert testimony of insanity— rebuttal testimony by prosecution's psychiatrist—statements made by defendant—no violation of right against self-incrimination

When a defendant presents expert testimony in support of his claim of insanity, the prosecution's psychiatrist may testify in rebuttal as to statements made by, or information obtained from, the defendant in the course of his examination of defendant without violating defendant's Fifth Amendment right against self-incrimination. The trial court must, however, limit the jury's consideration of such statements made during the examination to the issue of insanity and not permit their consideration on the issue of guilt.

4. Constitutional Law § 43; Criminal Law § 5— order requiring psychiatric examination—no violation of right to counsel

Although defense counsel should be notified in advance of any order requiring a psychiatric examination of a criminal defendant, defendant's Sixth Amendment right to counsel was not violated by an order entered without notice to defendant or his counsel where such order was superseded by a second order entered after a hearing in which defendant and his counsel participated. Furthermore, since a defendant who pursues an insanity defense may be ordered to undergo a psychiatric examination, he cannot complain that he was denied the assistance of counsel in deciding whether to submit to it, and there is no constitutional requirement that counsel be present during the psychiatric examination.

State v. Jackson

**5. Criminal Law § 5— order for psychiatric examination—notice of insanity defense not yet given—absence of prejudice**

Where defendant had not given formal notice under G.S. 15A-959 of his intent to rely on the defense of insanity at the time the court ordered defendant's commitment to Dorothea Dix Hospital for examination to determine his mental status at the time of the alleged offenses, the order of commitment was premature. However, this was not a fatal defect since defendant thereafter gave the statutory notice and pursued the insanity defense at trial.

**6. Criminal Law § 101— alleged juror misconduct—refusal to examine juror**

The trial court did not err in the denial of defendant's motion that the court examine a juror concerning whether the juror may have engaged in improper conduct during a trial recess or in the denial of defendant's alternative motion to replace the juror with an alternate where the trial court investigated the allegation of juror misconduct by receiving the testimony of defendant's sister which showed only that the juror, in response to an inquiry by an unknown person as to whether he was serving on defendant's jury, made an ambiguous gesture, and where there was nothing in the record to indicate that the juror engaged in any conversation about the case, or that the person to whom the gesture was directed had any connection with or knowledge of the case except that it was being tried.

**7. Kidnapping § 1— indictment for first degree kidnapping**

The indictment was insufficient to charge first degree kidnapping where it only alleged the elements of kidnapping set forth in G.S. 14-39(a) but failed to allege one of the elements set forth in G.S. 14-39(b), to wit, that defendant did not release the victim in a safe place, seriously injured the victim, or sexually assaulted the victim. In finding defendant guilty of first degree kidnapping, however, the jury necessarily found facts establishing the offense of second degree kidnapping, and the jury's verdict will be considered a verdict of second degree kidnapping.

**8. Criminal Law § 163— submission of greater offense not supported by indictment—plain error**

The submission to the jury of an issue as to defendant's guilt of an offense greater than that for which he has been properly indicted is plain error affecting a substantial right which may be reviewed on appeal even though not brought to the attention of the trial court.

**9. Criminal Law § 132— insanity issue—verdict not contrary to weight of evidence**

The trial court did not abuse its discretion in the denial of defendant's motion to set aside the verdict on the ground that testimony by the State's expert witness was insufficient to rebut the substantial evidence presented in support of defendant's plea of insanity. Even if the State had presented no evidence to rebut defendant's expert testimony that he was insane at the time of the offenses, the credibility of defendant's witnesses on the issue was a matter for jury determination.

10. **Criminal Law § 138— contemporaneous conviction—improper aggravating circumstance**

      The trial court in a murder and kidnapping trial erred in finding as an aggravating factor for second degree murder that defendant killed his victim while committing first degree kidnapping, since a conviction of an offense covered by the Fair Sentencing Act may not be aggravated by a contemporaneous conviction of a joined offense.

APPEAL by defendant from *Albright, Judge.* Judgments entered 1 October 1984 in Superior Court, FORSYTH County. Heard in the Court of Appeals 24 September 1985.

Ronnell Leverne Jackson was indicted for first degree murder in connection with the death of William Norbert Rismiller and for kidnapping Michelle Moser Holland. He entered pleas of not guilty in each case and gave notice of his intent to rely on the defense of insanity and to introduce expert testimony in support of the insanity defense.

At trial, the State's evidence tended to show that on 5 June 1984, at about 10:00 a.m., defendant entered the offices of WJTM, a Winston-Salem television station, armed with a pistol. He encountered Mrs. Holland, a receptionist, and Mr. Rismiller, a station executive, in the reception area. When Mr. Rismiller inquired as to what defendant wanted, defendant shot him. Defendant then forced Mrs. Holland, at gunpoint, to leave the building, get into her automobile, and drive him, according to directions which he gave, to the house where he lived. He then forced her into the house and into a bedroom. Shortly thereafter, police officers arrived at the house. Defendant refused to release Mrs. Holland, or to surrender himself, for approximately six hours.

During the time that defendant and Mrs. Holland were in the house, defendant told her that the television station had been spying on him through its satellite and other electronic equipment. He questioned her concerning the equipment and methods used by the station to spy on him. In addition, he talked to Mrs. Holland about her children and his son, and about oil paintings which defendant had hanging in the house. Defendant also communicated with police officers and demanded that a television news team be sent to the house. He guaranteed that he would not harm the camera crew, but said that he would shoot Mrs. Holland if any police officers attempted to enter the house. When the request

was denied, defendant demanded that WXII, another television station, broadcast an apology acknowledging that he had been spied on and explaining how it was done. The police arranged for a false broadcast to be carried over the local cable system to a limited area which included defendant's house. Shortly after this broadcast, in which a spokeswoman for the television station apologized for spying on defendant and asserted that it would not happen again, defendant released Mrs. Holland and surrendered himself to police. Throughout the incident, Mrs. Holland and the police officers described defendant as calm, deliberate and coherent. Mr. Rismiller died as a result of the gunshot wound inflicted by defendant.

Defendant offered evidence tending to show that he had, for a number of years, complained to family members, friends and a minister that he was being spied on through television, and that he had broken a number of television sets. He had purchased a newspaper advertisement offering a reward if the people who were spying on him would tell him why they were doing so. He had also contacted a newspaper reporter and a radio station employee concerning his belief that he was being spied upon. Defendant also presented testimony of a clinical psychologist, Dr. Steven Bradbard, and a psychiatrist, Dr. Selwyn Rose, that defendant suffered from severe paranoia. Dr. Rose gave his opinion that at the time of the incident on 5 June 1984 defendant was suffering from severe mental illness and was unable to differentiate between right and wrong.

In rebuttal, the State called Dr. Bob Rollins, a psychiatrist at Dorothea Dix Hospital, who agreed that defendant suffered from paranoia which impaired his judgment. However, in Dr. Rollins' opinion, defendant knew that it was wrong to kill Mr. Rismiller and legally wrong to kidnap Mrs. Holland, though defendant felt that he was justified in doing so.

The jury found defendant guilty of second degree murder and first degree kidnapping. Judgments were entered on the verdicts imposing consecutive sentences of 50 years imprisonment for second degree murder and 40 years imprisonment for first degree kidnapping. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General James E. Magner, Jr. for the State.*

*Gregory Davis for defendant appellant.*

MARTIN, Judge.

Defendant assigns error to (1) the entry of an order requiring him to undergo a psychiatric examination, (2) the refusal of the trial court to disqualify a juror for alleged misconduct, (3) the submission of first degree kidnapping to the jury, (4) the denial of his motions to set aside the verdicts, and (5) the sentences imposed. Our review discloses that the offense of first degree kidnapping was improperly submitted to the jury and we must therefore vacate the judgment in case No. 84CRS26931 and remand that case for entry of judgment as upon a verdict of guilty of second degree kidnapping. We also conclude that the court erred with respect to the sentence imposed upon defendant's conviction for second degree murder, and we therefore must remand case No. 84CRS 26930 for a new sentencing hearing. Otherwise, we find no prejudicial error in defendant's trial.

By his first and second assignments of error, defendant contends that the superior court was without authority to order defendant's commitment to Dorothea Dix Hospital for examination to determine his mental status at the time he allegedly committed the offenses. He contends also that the admission of testimony of the state psychiatrist, Dr. Rollins, on the issue of defendant's sanity violated his rights guaranteed by the fifth and sixth amendments to the United States Constitution because the information which provided a basis for Dr. Rollins' opinion was obtained during an unlawful examination. We reject each of these contentions.

Prior to 21 June 1984, defendant moved, through his counsel, for funds for the employment of a private psychiatrist to determine whether defendant knew right from wrong at the time of the offenses. An order was entered in district court allowing the motion. On 21 June 1984, the assistant district attorney filed a motion questioning defendant's capacity to proceed. The motion was evidently communicated by telephone to Judge Freeman, a resident superior court judge, who authorized his secretary to sign for him an order committing defendant to Dorothea Dix Hos-

pital for examination "to determine the question of the defendant's capacity to proceed, and to determine if defendant knew right from wrong and/or the nature and quality of his acts." The order was entered without notice to defendant or his counsel.

On 25 June 1984, true bills of indictment charging defendant with kidnapping and first degree murder were returned by the grand jury. On 26 June 1984, defendant's counsel filed application for writ of habeas corpus alleging that defendant's commitment to Dorothea Dix Hospital was unlawful. On the following day, a hearing on the return of the writ of habeas corpus was conducted before Judge Seay. Judge Seay found that defendant was being lawfully held without bond pending trial. He also found that defendant's private psychiatrist, Dr. Rose, had access to and had examined defendant while he was at the hospital. He concluded that the prosecutor's motion questioning defendant's capacity to proceed was proper and that, because he would simultaneously order defendant's commitment to the state hospital, it was unnecessary to determine whether Judge Freeman's signature had been improvidently placed on the 21 June 1984 commitment order. Defendant's release was denied and, by separate order, Judge Seay committed defendant to Dorothea Dix Hospital "for observation and treatment pursuant to G.S. 15A-1002 to determine defendant's capacity to proceed and to determine if the defendant knew right from wrong, and or the nature and quality of his acts."

[1] Defendant first argues that Judge Freeman's order of 21 June 1984 was improper because it was entered without notice and because the cases were still within the jurisdiction of the district court, since indictments had not yet been returned. The latter argument is clearly without merit. Pursuant to G.S. 7A-271, the superior court has exclusive, original jurisdiction over all actions in which a felony is charged. With respect to the entry of the order without notice to defendant or his counsel, we observe that while G.S. 15A-1002 expressly permits the prosecutor to question a defendant's capacity to proceed and contains no express provision for notice of such a motion, the requirement that the question of capacity to proceed may only be raised by a motion, setting forth the reasons for questioning capacity, implies that some notice must be given. However, even though we do not approve of the entry of a G.S. 15A-1002 commitment order with-

out at least minimal notice, we need not expressly decide the issue in this case. This is so because Judge Seay's order committing defendant for the same purposes as the earlier order was entered after indictments had been returned, and after defendant and his counsel had notice and an opportunity to be heard concerning the commitment and examination. Any impropriety in Judge Freeman's order, including the manner in which it was signed, was rendered harmless by Judge Seay's subsequent order.

[2] We next consider defendant's contention that both orders exceeded the court's authority because the orders directed an examination to determine defendant's mental status at the time the alleged offenses were committed. Defendant correctly points out that there is no statutory authority to compel such an examination. G.S. 15A-1002 provides that where capacity to proceed is questioned, the court may order an examination of a defendant for the purpose of "describing the present state of defendant's mental health," or "to determine his capacity to proceed." G.S. 15A-1002(b)(1), (2). The question remains, however, whether the trial court, in the absence of express statutory authorization or prohibition, has the inherent power to require a criminal defendant to undergo a mental examination to determine his sanity at the time of the offense.

In North Carolina insanity is an affirmative defense; a defendant has the burden of proving his insanity to the satisfaction of the jury. *State v. Leonard*, 296 N.C. 58, 248 S.E. 2d 853 (1978). In the absence of such proof, it is presumed that defendant was sane and responsible for his alleged criminal acts. *Id.*

> The prosecution may assume, as the law does, that the defendant is sane. The assumption persists until challenged and the contrary is made to appear from circumstances of alleviation, excuse, or justification; and it is incumbent on the defendant to show such circumstances to the satisfaction of the jury, unless they arise out of the evidence against him. [Citation omitted.]

*Id.* at 65, 248 S.E. 2d at 857. While evidence of sanity or insanity may be provided by lay witnesses, *State v. Moore*, 268 N.C. 124, 150 S.E. 2d 47 (1966), expert psychiatric testimony is "undoubtedly superior to any other method the courts have for gaining access to an allegedly insane defendant's mind." *State v. Wade*, 296

N.C. 454, 463, 251 S.E. 2d 407, 412 (1979). Where a defendant gives notice of his intent to pursue a defense of insanity, it is not only reasonable, but necessary, that the prosecution be permitted to obtain an expert examination of him. Otherwise there would be no means by which the State could confirm a well-founded claim of insanity, discover fraudulent mental defenses, or offer expert psychiatric testimony to rebut the defendant's evidence where insanity is genuinely at issue. Thus, we believe that the trial court has the authority to order such an examination as a part of its inherent power to oversee the proper administration of justice.

We find support for our decision in *State v. Grayson*, 239 N.C. 453, 80 S.E. 2d 387 (1954). Although the issues present in the case *sub judice* were not directly addressed in *Grayson*, our Supreme Court found no fault with the trial court's order, entered over defendant's objection, directing that defendant submit to a mental examination where defendant had interposed insanity as a defense. Courts of other jurisdictions have also held that a trial court may, in the exercise of its inherent power, order such an examination for the purpose of determining an accused's sanity at the time of the alleged offense. *See Shifflett v. Commonwealth*, 221 Va. 760, 274 S.E. 2d 305 (1981); *Annot.*, 17 A.L.R. 4th 1260 (1982).

[3] Defendant argues further that the admission of testimony by Dr. Rollins as to statements made by defendant during the course of the examination, and of Dr. Rollins' opinions based on those statements, was violative of defendant's fifth amendment right against self-incrimination. He cites *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed. 2d 359 (1981) in support of his position. *Smith*, however, is not apposite to the facts before us. In *Smith*, the prosecution offered, at the sentencing phase of a capital trial, testimony of a court-appointed psychiatrist to prove defendant's future dangerousness. The psychiatrist based his opinion on information obtained from defendant during an examination to determine his competency to proceed to trial. Defendant was not warned, before the examination, of his right to remain silent nor was he advised that his statements could be used against him at the sentencing hearing. The Supreme Court held that under those circumstances, the use of the psychiatrist's testimony as substantive evidence of Smith's future dangerousness in order to obtain the death penalty violated his fifth amendment right. In so

holding, however, the Court specifically noted that Smith had neither introduced psychiatric evidence in his own behalf, nor indicated that he might do so.

> When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case. Accordingly, several Courts of Appeals have held that, under such circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist. [Citations omitted.]

*Id.* at 465, 68 L.Ed. 2d at 370.

This case differs from *Smith*. Only after defendant offered the testimony of Dr. Rose in order to raise the defense of insanity did the State offer the testimony of Dr. Rollins to rebut evidence that defendant was insane at the time of the offense. Defendant, by introducing the testimony of his own psychiatrist concerning information obtained from his examination of defendant, waived his right to invoke the protection of the fifth amendment to exclude testimony by the State psychiatrist as to information obtained from defendant during the court ordered examination. *Vardas v. Estelle*, 715 F. 2d 206 (5th Cir. 1983). Moreover, we note that Dr. Rollins did not testify as to any inculpatory statements made to him by defendant which had not already been placed in evidence through the testimony of Dr. Rose. The trial court correctly instructed the jury that they were to consider the evidence of statements made by defendant to Dr. Rollins only as they established a basis for his opinion as to sanity, and not on the issue of guilt. We find no violation of defendant's privilege against self-incrimination by the admission of Dr. Rollins' testimony.

[4] Finally, as to these assignments of error, defendant contends that the court-ordered psychiatric examination as it dealt with sanity at the time of the offenses was violative of his sixth amendment right to effective assistance of counsel. He bases this contention on the State's failure to notify his counsel, in advance, of the examination ordered by Judge Freeman and of the fact that it would encompass matters other than competency to proceed.

As previously noted, Judge Freeman's order was superseded by order of Judge Seay. At the time of Judge Seay's order for defendant's examination, both defendant and his counsel were present in court, had an opportunity to be heard concerning the order, and had actual notice of the scope of the examination and therefore, the purposes for which it could be used. Defendant elected to pursue, his insanity defense through the testimony of Dr. Rose with full notice that Dr. Rollins was available to testify in rebuttal. Furthermore, since a defendant who pursues an insanity defense may be ordered to undergo such an examination, he cannot complain that he was denied the assistance of counsel in deciding whether or not to submit to it. *Vardas v. Estelle, supra.* There is no constitutional requirement that counsel be present during a psychiatric examination to determine sanity. *United States v. Albright*, 388 F. 2d 719 (4th Cir. 1968). Although we are of the opinion that defense counsel should be notified in advance of any order requiring a psychiatric examination of a criminal defendant, we find no violation of defendant's sixth amendment rights under the circumstances of this case.

In summary, we hold that in cases where a criminal defendant gives notice that he will raise insanity as a defense to the charges against him, the trial court has the inherent power to require the defendant to submit to a mental examination by a state or court-appointed psychiatrist for the purpose of inquiring into his mental status at the time of the alleged offense. We also hold that where a defendant presents expert testimony in support of his claim of insanity, the prosecution's psychiatrist may testify in rebuttal as to statements made by, or information obtained from, the defendant in the course of such examination without violating defendant's fifth amendment rights. The trial court must, however, limit the jury's consideration of such statements made during the examination to the issue of insanity and not to the issue of guilt.

[5]   We are cognizant that at the time of both orders for commitment to Dorothea Dix, defendant had not given formal notice, as required by G.S. 15A-959, of his intent to rely on the insanity defense. To that extent, the order was premature. However, we do not deem this to be fatally defective inasmuch as defendant thereafter gave the statutory notice and, in fact, pursued the insanity defense and therefore could have been compelled to submit

to such examination. We cannot see how defendant was prejudiced by undergoing the examination as to sanity at the same time his competency to proceed was being evaluated.

[6] Defendant next assigns as error: (1) the denial of his motion that the court examine a juror concerning an allegation that the juror may have engaged in improper conduct during a trial recess; and (2) the denial of his alternative motion to dismiss the juror and replace him with an alternate. These motions were made at the midday recess on 27 September, after completion of all of the evidence and just before the jury arguments were to commence. At that time, defendant's counsel reported to the court that at the lunch recess on the previous day, one of the jurors was observed to have made a gesture in response to an inquiry from an unknown person as to whether the juror was serving on the jury for defendant's trial. Counsel described the gesture as similar "to a basketball game where Dean Smith puts his hand to his throat after the referee makes a controversial call." The gesture had been reported to defendant's counsel by Ramona Jackson, defendant's sister.

The court, in chambers, examined Ramona Jackson concerning the incident. Her testimony was as follows:

THE WITNESS: I was in Little Pep Restaurant and the jury was walking on the other side of the street and two men coming in Little Pep and they called to them. One of them said I heard you was on the jury for Jackson, and he said yeah, and came on in and after that, two men came out with the two men and came in Little Pep and said I'm going to sit here and have lunch with them. I know I'm not supposed to have lunch with us. After that, I don't know what happened.

THE COURT: Did the juror say anything?

THE WITNESS: When the man said hello, say, yeah. That's when he came and said see if he going to have lunch with him.

THE COURT: Did the juror say anything about the case?

THE WITNESS: No. I didn't hear him say anything.

THE COURT: Just a, a gesture?

THE WITNESS: Yes.

THE COURT: Did the other people ask him anything about the case or try to give him any information about the case?

THE WITNESS: I didn't hear him because they left out.

THE COURT: Let the record show—she showed that that gesture, when the question was asked to the juror, the juror said yes, and put his hand around his neck. Is that what you are telling me?

THE WITNESS: Yes, like this.

MR. COLE: This happened today or yesterday?

THE WITNESS: Yesterday at lunch time at recess time.

After hearing Ms. Jackson's testimony, the trial judge observed that there was no suggestion that the juror had relayed or received any information and that he did not consider that the reported gesture, the intent of which was subject to differing interpretations, was sufficient to risk the effect that an inquiry of the juror might have on him or on the other jurors. He declined for similar reasons to summarily dismiss the juror.

Where juror misconduct is alleged, it is incumbent upon the trial court to make such an investigation as is appropriate, including examination of the juror involved when warranted, to determine whether or not misconduct has occurred, and if so, whether such conduct has resulted in prejudice. *State v. Drake*, 31 N.C. App. 187, 229 S.E. 2d 51 (1976). This determination must be made on the facts and circumstances present in each case. *Id.* "The circumstances must be such as not merely to put suspicion on the verdict, because there was opportunity and a chance for misconduct, but that there was in fact misconduct. When there is merely matter of suspicion, it is purely a matter in the discretion of the presiding judge." *State v. Johnson*, 295 N.C. 227, 234-35, 244 S.E. 2d 391, 396 (1978) (quoting *Lewis v. Fountain*, 168 N.C. 277, 279, 84 S.E. 278, 279 (1915)). The court's ruling on the question of juror misconduct will not be disturbed on appeal unless it is clearly an abuse of discretion. *Stone v. Griffin Baking Co.*, 257 N.C. 103, 125 S.E. 2d 363 (1962); *State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190 (1968). A denial of motions made because of al-

leged juror misconduct is equivalent to a finding that no prejudicial misconduct has been shown. *Sneeden, supra.*

Applying the foregoing rules to the facts and circumstances of this case, we find no abuse of discretion. The trial judge investigated the allegation of juror misconduct by receiving the testimony of defendant's sister, who was a witness obviously interested in the outcome of the trial. Her testimony showed nothing more than that the juror had made a gesture, which, at most, was ambiguous and subject to differing interpretations. There was nothing in the record to indicate that the juror engaged in any conversation about the case, or that the person to whom the gesture was directed had any connection with, or knowledge of, the case except that it was being tried. The trial judge was in a position, after hearing Ramona Jackson's testimony, to determine whether her account of the alleged incident warranted further investigation. He concluded that it did not. An examination of the juror involved in alleged misconduct is not always required, especially where the allegation is nebulous or where the witness did not overhear the juror or third party talk about the case. *Drake, supra.* This assignment of error is overruled.

[7] By his final assignment of error relating to the trial, defendant contends that the trial court erred in submitting to the jury the issue of defendant's guilt of first degree kidnapping because the indictment was insufficient to charge that offense. We agree.

The indictment in case No. 84CRS26931 alleged:

Date of Offense: June 5, 1984

Offense in Violation of G.S. 14-39

> The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully and feloniously did kidnap Michelle Holland, a person who had attained the age of 16 years by unlawfully removing her from one place to another and confining and restraining her without her consent, and for the purpose of holding her as a hostage, and facilitating the flight of the defendant, Ronnell Leverne Jackson following the commission of the felony of murder.

In *State v. Jerrett,* 309 N.C. 239, 307 S.E. 2d 339 (1983) our Supreme Court held that while the offense of kidnapping is cre-

ated and defined by G.S. 14-39(a), the offense of first degree kidnapping is further defined by G.S. 14-39(b) as a kidnapping in which the defendant does not release the victim in a safe place, or in which he seriously injures or sexually assaults the victim. In order to properly indict a defendant for first degree kidnapping, the State must allege not only the applicable elements of G.S. 14-39(a) but also the applicable additional element required by G.S. 14-39(b).

The indictment in this case alleged the essential elements of kidnapping as set forth in G.S. 14-39(a) but did not allege any of the elements of first degree kidnapping as set forth in G.S. 14-39(b). It was, therefore, insufficient to charge defendant with the offense of first degree kidnapping, but was sufficient to support a conviction of second degree kidnapping.

[8] The State, however, maintains that since defendant neither challenged the sufficiency of the indictment at trial nor objected to the submission of the instructions concerning first degree kidnapping, he has waived his right to assert the error on appeal. We disagree. The failure of a criminal pleading to state essential elements of an alleged violation may be asserted on appeal even though no objection was made in the trial court. G.S. 15A-1446 (d)(4). Furthermore, we believe that the submission to the jury of the issue of defendant's guilt of an offense greater than that for which he has been properly indicted is "plain error affecting a substantial right" which may be reviewed on appeal even though not brought to the attention of the trial court. *See State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983).

This error, however, does not mandate a new trial. The trial court correctly instructed the jury as to each of the elements of kidnapping as required by G.S. 14-39(a), thus the jury, in convicting defendant of first degree kidnapping, necessarily found all of the facts required for conviction of second degree kidnapping. Therefore, we will consider the jury's verdict to be a verdict of guilty of second degree kidnapping, vacate the judgment imposed upon the verdict of guilty of first degree kidnapping in case No. 84CRS26931, and remand the case to the Superior Court of Forsyth County for judgment and resentencing as upon a verdict of guilty of second degree kidnapping. *See State v. Bell*, 311 N.C.

131, 316 S.E. 2d 611 (1984); *State v. Baldwin,* 61 N.C. App. 688, 301 S.E. 2d 725 (1983).

**[9]** Defendant next assigns error to the denial of his post-trial motions to set aside the verdicts as being contrary to the weight of the evidence. He argues that Dr. Rollins' testimony was insufficient to rebut the substantial evidence presented in support of defendant's plea of insanity.

A motion to set aside the verdict as being contrary to the weight of the evidence is addressed to the sound discretion of the trial court, whose ruling on the motion will not be disturbed absent an abuse of discretion. *State v. McKenna,* 289 N.C. 668, 224 S.E. 2d 537 (1976); *State v. Hageman,* 56 N.C. App. 274, 289 S.E. 2d 89, *aff'd,* 307 N.C. 1, 296 S.E. 2d 433 (1982). Defendant had the burden to satisfy the jury on the issue of his insanity. Even if the State had presented no evidence to rebut the expert testimony that defendant was insane at the time of the offenses, the credibility of defendant's witnesses on the issue was a matter for jury determination. *State v. Leonard, supra.* "A diagnosis of mental illness by an expert is not in and of itself conclusive on the issue of insanity." *Id.* at 65, 248 S.E. 2d at 857. Except as previously discussed with regard to first degree kidnapping, we find no error in the trial court's refusal to disturb the verdicts.

**[10]** Finally, we reach defendant's assignments of error relating to the sentences imposed. In case No. 84CRS26930, in which defendant was convicted of second degree murder, the trial court found, as the sole aggravating factor, that "Defendant shot and killed his victim while committing 1st degree kidnapping." This finding must be held to be error. "[A] conviction of an offense covered by the Fair Sentencing Act may not be aggravated by contemporaneous convictions of offenses joined with such offense." *State v. Westmoreland,* 314 N.C. 442, 334 S.E. 2d 223 (1985). Therefore, we must remand the second degree murder conviction for a new sentencing hearing.

Defendant also assigns error with respect to the sentence imposed for first degree kidnapping. Because we vacate that judgment and remand for entry of judgment as upon a verdict of guilty of second degree kidnapping, and a sentencing hearing for that offense, we deem it unnecessary to address this assignment of error.

No. 84CRS26930—second degree murder—no error in the trial; remanded for new sentencing hearing.

No. 84CRS26931—kidnapping—judgment vacated and remanded for judgment and new sentencing hearing.

Judges ARNOLD and WELLS concur.