IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-322

Filed 5 November 2025

Cumberland County, No. 23CVS000021-250

MIYA GILES-JONES, Plaintiff,

v.

THURSTON ROBINSON, Defendant.

Appeal by defendant from order entered 12 August 2024 by Judge George R. Hicks III in Cumberland County Superior Court. Heard in the Court of Appeals 9 September 2025.

> *Tin Fulton Walker & Owen, PLLC, by Zachary Ezor, for appellant-defendant.*
>
> *Law Offices of Antonio F. Gerald, PLLC, by Antonio Gerald, and the Michael Porter Law Firm, by Michael R. Porter, for plaintiff-appellee.*

FLOOD, Judge.

Defendant Thurston Robinson appeals from the trial court's granting of Plaintiff Miya Giles-Jones's motion for a new trial pursuant to Rule 59. On appeal, Defendant argues the trial court erred in granting a new trial where Plaintiff failed to show prejudice. Upon careful review, we conclude the trial court abused its discretion in granting a new trial where there was no showing of prejudice.

**I. Factual and Procedural Background**

- 1 -

In January 2023, Plaintiff filed a civil complaint against Defendant. A trial was held in 2024, and, prior to opening statements, the trial court instructed the jurors to "not talk or communicate in any way with any of the parties in this case[,]" including the witnesses. After the close of all evidence, the jury returned a unanimous verdict in favor of Defendant.

On 28 May 2024, Plaintiff filed a motion for a new trial pursuant to Rule 59(a)(2), requesting a new trial "based upon juror misconduct[.]" In her motion, Plaintiff explained that "shortly after [witness Sarrayyah Kennedy's] testimony" during the trial, a juror "initiated contact with [Kennedy] via [F]acebook messenger and propositioned her for a date[,]" which she declined. Kennedy's role in the trial lasted for about ten minutes, during which time she testified that she was "best friend[s]" with Plaintiff's mother and had a personal dispute with Defendant's wife.[1] Plaintiff contended that because Kennedy "turned [the juror] down for said date and deleted the message[,]" this incident "tainted the trial" and "prevented Plaintiff from having twelve unbiased and impartial jurors[.]"

Plaintiff attached Kennedy's affidavit to her Rule 59 motion. In Kennedy's affidavit, she explained that the juror "was a friend on [her] Facebook page prior to

---

[1] According to the transcript, the jury entered the courtroom at 11:37 a.m., Kennedy was called to the witness stand, the jury heard Kennedy's testimony—both direct and cross-examination—and the jury then exited the courtroom at 11:53 a.m. During these fifteen minutes, the jury left the courtroom briefly between 11:41 a.m. until 11:46 a.m. while the parties discussed an evidentiary matter.

the beginning of the aforementioned trial, but [they] had never met each other before in person prior to the trial." Kennedy stated that "[o]n the day he message[d] me, [the juror] had asked me out on a date but I told him that I would not because the guy I was dating last year passed away." She then "told [the juror] that [they] needed to delete each other until after the trial[,]" which she did. She did not inform counsel until after the verdict was reached, claiming that she "did not come forward sooner . . . because the case was not discussed" in the brief communication during the trial.

The trial court conducted a hearing on the matter during which the trial court had the following relevant examination with Kennedy:

> THE COURT: All right. Did you provide any information to him about this case whether it be about the Plaintiff or family or anything else to him?
>
> THE WITNESS: No.
>
> THE COURT: Didn't give him any information at all?
>
> THE WITNESS: No information whatsoever.

The trial court then asked if Kennedy and the juror had communicated since then, to which Kennedy responded they had on 18 May 2024, after the verdict had been reached and the judgment was entered.

> THE COURT: Let's talk about the 18th. What happened?
>
> THE WITNESS: The 18th he just pretty much was asking me out. And then he said that he wished that the case could have went different [sic], and just saying what shortcomings on that side.

> THE COURT: Okay. So I don't want to get into the particulars of that necessarily, but he was providing the reasoning for the jury's decisions -- for at least some of it?
>
> THE WITNESS: Yes, yes, some -- somewhat, yes.
>
> THE COURT: Okay. And well, to the extent he told you, it didn't have anything to do with y'all not dating, did it?
>
> THE WITNESS: No.

The juror did not testify at the hearing. The trial court subsequently granted Plaintiff's motion for a new trial. Defendant timely appealed.

## II. **Jurisdiction**

This Court has jurisdiction to hear this appeal from a superior court pursuant to N.C.G.S. § 1-277(a) (2023).

## III. **Standard of Review**

This Court reviews a trial court's decision to grant a Rule 59 motion for abuse of discretion. *Batlle v. Sabates*, 198 N.C. App. 407, 423 (2009). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *Davis v. Davis*, 360 N.C. 518, 523 (2006) (citation and internal quotation marks omitted). In order to grant a new trial pursuant to Rule 59(a)(2), the moving party must "demonstrate prejudice." *Sisk v. Sisk*, 221 N.C. App. 631, 635–36 (2012) ("New trials are not awarded because of technical errors. The error must be prejudicial."). "When the trial court grants or denies a motion for a new

trial without making findings of fact, our review is limited to determining whether the record indicates that the ruling amounts to a manifest abuse of discretion." *Strickland v. Jacobs*, 88 N.C. App. 397, 399–400 (1988); *see also Elks v. Hannan*, 68 N.C. App. 757, 760 (1984) ("[T]he significant and controlling thing for the purposes of [] appeal is that the record does not show that the order was clearly erroneous or amounted to a manifest abuse of discretion." (citation omitted)); *State v. Jackson*, 77 N.C. App. 491, 502–03 (1985) (determining from the record, including the trial court's investigation, that there was no abuse of discretion where Plaintiff failed to show prejudice).

## IV. <u>Analysis</u>

On appeal, Defendant argues the trial court erred in granting Plaintiff's Rule 59 motion for a new trial. Specifically, Defendant contends Plaintiff did not demonstrate that the incident between the witness and the juror prejudiced Plaintiff. We agree.

Under Rule 59(a)(2), "[a] new trial may be granted" based on the "[m]isconduct of the jury[.]" N.C.R. Civ. P. Rule 59 (a)(2). "Misconduct must be determined by the facts and circumstances of each case, and the circumstances must be such as not merely to put a suspicion on the verdict, because there was an opportunity and a chance for misconduct, but that there was in fact misconduct." *State v. Rutherford*, 70 N.C. App. 674, 677 (1984) (citation modified). "Where juror misconduct is alleged,

it is incumbent upon the trial court to make such an investigation as is appropriate, including examination of the juror involved when warranted, to determine whether or not misconduct has occurred, and if so, whether such conduct has resulted in prejudice." *Jackson*, 77 N.C. App. at 502. "An examination of the juror involved in alleged misconduct is not always required, especially where the allegation is nebulous or where the witness did not overhear the juror or third party talk about the case." *Id.* at 503. Additionally, "[a] denial of motions made because of alleged juror misconduct is equivalent to a finding that no prejudicial misconduct has been shown[,]" and thus, in other words, a granting of motions made because of juror misconduct will be the equivalent to a finding that prejudicial misconduct has been shown. *Id.* at 502–03.

Our Supreme Court has held that "nonprejudical conversations between jurors and parties . . . will not vitiate the verdict." *O'Berry v. Perry*, 266 N.C. 77, 81 (1965) (citation omitted). In *O'Berry*, a juror, the plaintiff, and a witness met while leaving the courthouse for a lunch break, and "walked to lunch together, talking about fishing and corned herring." *Id.* at 80. "[T]hey thought the proprieties and the amenities were observed so long as they did not discuss the case." *Id.* at 81. One of the multiple defendants moved for a new trial, but the trial court denied the motion, finding that although the incident should not have taken place, "the questioned encounter was casual, and that [the juror] had not affected the verdict." *Id.* at 81. Our Supreme

Court affirmed the denial for a new trial, and held that "brief, public, and nonprejudicial conversations between jurors and parties or their relatives will not vitiate the verdict or require that the jury be discharged, and a mistrial is properly denied where the conversation was conceived in innocence and related to a matter entirely foreign to the case." *Id.* at 81 (citation omitted); *see also Rutherford*, 70 N.C. App. at 677–78 (affirming no new trial was necessary where: "the conversation lasted only minutes" and "did not concern the defendants' case or [the juror's] jury service"; and "the trial court concluded that the conversation had no effect on the verdicts rendered against the defendants[,] and that the defendants had not been prejudiced thereby").

Although we give great deference to the trial court when reviewing under an abuse of discretion standard, *see Davis*, 360 N.C. at 523, here, we find no evidence in the Record to support a demonstration of prejudice. The conversation between the juror and Kennedy was brief and did not involve any information about the case; the parties ceased further communication until after the trial; Kennedy testified to the trial court that, based on what the juror later told her, the outcome of the case did not have to do with Kennedy declining a date with him while she was still dealing with the loss of her previous boyfriend's passing; and the juror did not testify at the hearing to show the communication created any prejudice towards Plaintiff. *See Sisk*, 221 N.C. App. at 636; *Jackson*, 77 N.C. App. at 502. Since the trial court made no

findings of fact, our review of the Record here indicates that granting a new trial was an abuse of discretion where the evidence from the hearing shows only that the verdict was not affected by this conversation. *See Strickland*, 88 N.C. App. at 399–400; *see also O'Berry*, 266 N.C. at 81; *Rutherford*, 70 N.C. App. at 677.

We do not lightly conclude the trial court abused its discretion in granting a new trial:

> [W]e note that the trial judges of this state have traditionally exercised their discretionary power to grant a new trial in civil cases quite sparingly in proper deference to the finality and sanctity of the jury's findings. We believe that our appellate courts should place great faith and confidence in the ability of our trial judges to make the right decision, fairly and without partiality, regarding the necessity for a new trial. Due to their active participation in the trial, their first-hand acquaintance with the evidence presented, their observances of the parties, the witnesses, the jurors and the attorneys involved, and their knowledge of various other attendant circumstances, presiding judges have the superior advantage in best determining what justice requires in a certain case. . . . Consequently, an appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice.

*Worthington v. Bynum*, 305 N.C. 478, 487 (1982). Because the cold Record does not contain a showing of prejudice, *see id.* at 487, we find the trial judge's decision to grant a new trial to be unsupported by reason, *see Davis*, 360 N.C. at 523.

Plaintiff, arguing there should be a "presumption of prejudice in this instance[,]" requests this Court to "lay down a clear Rule that a Trial Court has the

ultimate authority to regulate jurors reaching out to witnesses via social media or by other electronic means during the course of a trial." The dissent references portions of Plaintiff's argument, including: "the witness's rejection of the juror is 'prima [facie]' evidence that the contact *could* create juror bias" and that a "desire for dates and trying to get to know a woman *can* make you do irrational and things you shouldn't[.]" (emphasis added). The dissent likewise points out that Plaintiff requested the trial court to find that such "inappropriate contact . . . is prejudicial in nature" since "we'll never truly know what would have happened but for that[.]"

Establishing such a *per se* rule, however, would allow trial courts to grant a new trial for non-prejudicial, technical violations of its orders, which conflicts with our well-settled principles that hold "[n]ew trials are not awarded because of technical errors[,]" but rather only when the error is "prejudicial." *Sisk*, 221 N.C. App. at 636. To affirm the trial court would require creating a rule that inappropriate juror contact is *per se* prejudicial, or allowing the reviewing court to make inferences of prejudice not shown in the Record; we decline to do either. *See State v. Branch*, 306 N.C. 101, 105 (1982) ("In making our review and reaching our determination upon the facts of a particular case, we can judicially know only what appears of record on appeal and will not speculate as to matters outside the record.").

Notwithstanding a juror violating the trial court's instruction to have no witness contact, the Record before us lacks a showing of *actual* prejudice. The witness

explicitly answered "[n]o" when the trial court asked if the juror informed the witness whether the verdict had "anything to do with y'all not dating" and confirmed the two did not discuss the case. Further, the trial court disagreed with Plaintiff calling the witness's actions "rejection per se." Paraphrasing the witness's affidavit, the trial court explained the witness had told the juror she had lost someone to death in the past, "so maybe we should not do it now[,]" and "let's not talk until after the trial." The trial court then stated that such communication "doesn't seem to lead to a disgruntled juror."

We discern no evidence in the Record of Plaintiff establishing that the brief communication between a witness and a juror prejudiced the trial. *See Sisk*, 221 N.C. App. at 636. Accordingly, we hold the trial court abused its discretion in awarding Plaintiff's Rule 59 motion for a new trial. *See Davis*, 360 N.C. at 523.

## V. <u>Conclusion</u>

Upon careful review, we conclude the trial court abused its discretion in awarding Plaintiff's Rule 59 motion for a new trial where Plaintiff failed to demonstrate prejudice.


VACATED AND REMANDED.

Judge CARPENTER concurs.

Judge COLLINS dissents in separate opinion.

COLLINS, Judge, dissenting.

A juror contacted a witness on Facebook Messenger, likely from the jury room, minutes after the witness had testified, flagrantly violating the trial court's prohibitions against using cell phones and internet devices and contacting witnesses. After a thorough investigation into the matter, the trial court granted Plaintiff's Rule 59(a) motion for a new trial. Because the record indicates to me no abuse of discretion by the trial court, I respectfully dissent.

A new trial may be granted to a party for "[m]isconduct of the jury." N.C. Gen. Stat. § 1A-1, Rule 59(a)(2) (2024). A motion under Rule 59(a) "is addressed to the sound discretion of the trial judge." *Frye v. Anderson*, 86 N.C. App. 94, 95 (1987) (citation omitted). "A ruling in the discretion of the trial judge raises no question of law." *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 381 (1985) (citation omitted).

> It has been long settled in our jurisdiction that an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge.

*Worthington v. Bynum*, 305 N.C. 478, 482 (1982) (citations omitted). "The standard for review of a trial court's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is virtually prohibitive of appellate

intervention." *Pearce v. Fletcher*, 74 N.C. App. 543, 544 (1985). "[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Worthington*, 305 N.C. at 487.

After the jury was impaneled in this case, the trial court instructed the jurors, consistent with North Carolina Pattern Instruction Crim. 100.25, in pertinent part as follows:

> Now I've got a few rules here, and some of these are quite repetitive -- can't hurt. *While you serve as a juror in this case, I want you to follow each of these rules.*
>
> . . . .
>
> Third, *you must keep your cell phones and internet devices off when you're in the courtroom or in the jury room for that matter.* That assures us that you're not doing independent research in the jury room, and I've already told you you can't do that.
>
> We've only had one violation so far which is amazing. I heard it very quietly back there, but while you're in the courtroom, keep them somewhere hidden, *keep them turned off.*
>
> While the court -- *while we're in trial, you may only talk on a cell phone or use the device if you are outside of the jury room* preferably if you're on a break and go away somewhere. All right.
>
> . . . .
>
> Fifth, *you must not talk or communicate in any way with any of the parties in this case. That means the lawyers, the witnesses, anybody, and that rule applies as well as outside of the courtroom. It prohibits any type of*

*conversation, again, whether it's about the weather or just to pass the time of day.*

You will see in the courtroom and about the courthouse lawyers, law enforcement, and others who may be involved in the case. *If you pass us or any of the witnesses in the elevator, in the hallway, whatever, ignore us, and we will also ignore you.* It's not being rude. *It's just important for you to understand it would be improper to engage in any kind of conversation*, and it just has an appearance of impropriety.

. . . .

*Each of you must obey each of these rules to the letter. Unless you do, there's no way the Plaintiff or the Defendant can be assured of absolute fairness and impartiality.*

*It is your duty both while the trial is in progress or while it's even on a recess or while you're in the jury room to see that you remain a fair and impartial trier of the facts.* Again, if you violate these rules, it could be contempt and subject you to punishment. We don't want to go there.

(emphasis added).

In direct violation of many of these instructions, a juror contacted one of Plaintiff's witnesses on Facebook Messenger, likely from the jury room, at around noon on the second day of trial, within minutes after the witness had testified. The juror was the witness's Facebook Friend, and he asked her out on a date. The witness declined. She told the juror they "needed to delete each other until after the trial[.]" Two days later, the jury returned its verdict in favor of Defendant. Two days after that, the juror again contacted the witness through Facebook Messenger to ask her

out on a date; she declined and the two exchanged messages. Thereafter, the juror continued to contact the witness and ask her out.

The trial court held a hearing on Plaintiff's Rule 59(a) motion for a new trial. The juror could not be located; the witness testified, submitted an affidavit, and submitted screen shots of messages exchanged between the juror and herself after the trial. The witness testified that she had deleted the messages exchanged during trial. The trial court and both parties' attorneys questioned the witness extensively about the circumstances surrounding the juror's misconduct, and the trial court heard extensive arguments by the attorneys.

The trial court indicated that it was "concerned about the standard we set if we say this jury was a fair jury" and was specifically "concerned about juror contact" in light of its repeated instructions to the jurors not to have any contact with witnesses. The trial court considered Plaintiff's arguments as to prejudice, including: (1) the witness's rejection of the juror is "prima facie" evidence that the contact could create juror bias; (2) a "desire for dates and trying to get to know a woman can make you do irrational and things you shouldn't"; and the "inappropriate contact . . is prejudicial in nature, and unfortunately, we'll never truly know what would have happened but for that[.]" The trial court also considered Defendant's arguments that there was no prejudice.

Toward the end of the hearing, the trial court recessed and spoke with the attorneys in chambers. Upon returning, the trial court announced:

> All right. Having discussed this with counsel, I -- I'm going
> to take this under advisement. There are significant issues
> on both sides, and I want to make sure we get this right.

Ten days later, the trial court issued an order stating, "[T]he Court, after conducting an investigation into the alleged prejudicial juror misconduct, reviewing the record proper, hearing evidence, and considering arguments of counsel and relevant law, in the exercise of its discretion hereby ALLOWS the Plaintiff's Motion for a New Trial."

Although the majority recites an abuse of discretion standard of review, it then essentially applies a de novo standard to determine – on the cold record – that there was no prejudice from the juror misconduct. However, as this Court in *Elks v. Hannan* articulated in affirming the trial court's order allowing a new trial in that case:

> The order being discretionary, that the record does not
> positively show that the jury was prejudiced by the incident
> which occurred is unimportant; the significant and
> controlling thing for the purposes of this appeal is that the
> record does not show that the order was clearly erroneous
> or amounted to a manifest abuse of discretion.

*Elks v. Hannan*, 68 N.C. App. 757, 760 (1984) (citation omitted).

Defendant and the majority rely on *O'Berry v. Perry*, 266 N.C. 77, 81 (1965), to support the conclusion that the trial court in this case abused its discretion in awarding a new trial. I think this reliance is misguided.

First, that case is factually distinguishable. Unlike in *O'Berry* where a juror and a witness inadvertently came into contact in a public place when headed to lunch, the juror in this case privately initiated digital contact with the witness from the jury room within minutes of her testifying. Furthermore, the fact that the Court in *O'Berry* concluded that the trial court did not abuse its discretion does not *compel* a conclusion in this case that the trial court abused its discretion. That is the nature of the abuse of discretion standard.

In *O'Berry*, the trial court conducted a hearing on the matter, "found that the questioned encounter was casual, and that [it] had not affected the verdict[,]" and denied the motion for a new trial. *Id.* at 81. In affirming the trial court's order, we noted that the encounter did not "*require* that the jury be discharged," *id.* (emphasis added)(citations omitted), and we reiterated the discretionary nature of the trial court's decision: "The granting or denial of a motion for a mistrial or a new trial because of the alleged misconduct of a juror rests in the sound discretion of the trial judge, and his ruling will be upheld on appeal unless it is clearly erroneous[,]" *id.* (citation omitted). We concluded, "In the judge's refusal to set this verdict aside there is no evidence or suggestion of an abuse of discretion. His ruling will not be disturbed." *Id.*

We did not state in *O'Berry* that the encounter would not have *allowed* the jury to be discharged or that the trial court would have abused its discretion had it allowed

the motion for a new trial.  We simply refused to disturb the trial court's ruling because there was "no evidence or suggestion of an abuse of discretion."  *Id.*

Here, as in *O'Berry*, there is "no evidence or suggestion of an abuse of discretion."  *Id.*  To be sure, the trial court in this case could have denied the motion for a new trial, and I would have affirmed that decision because the record does not "affirmatively demonstrate[] a manifest abuse of discretion by the judge."  *Worthington*, 305 N.C. at 482 (citations omitted).  Likewise, I would affirm the trial court's order granting a new trial because the record does not "affirmatively demonstrate[] a manifest abuse of discretion by the judge."  *Id.*