STATE OF NORTH CAROLINA v. JOHN ROBERT SHANKLIN
AND JAMES RONALD COLE

No. 7215SC793

(Filed 20 December 1972)

1. Burglary and Unlawful Breakings § 3; Indictment and Warrant § 9—
   description of subject premises — sufficiency

   Though the better practice in a felonious breaking, entering and larceny case is to identify the subject premises by street address or by some clear description and designation to set them apart from like and other structures, the bill of indictment in this case was sufficient where it clearly identified the county in which the subject building was located and identified the name of the business carried on in the building and also identified one E. M. Smith as owner of the property allegedly taken from the building.

2. Searches and Seizures § 3— issuance of search warrant — probable cause

   Information contained in affidavits was sufficient for the magistrate to find probable cause for issuance of search warrants for defendants' premises where such information included a statement that a reliable informer had seen part of the stolen property in defendants' premises.

3. Searches and Seizures § 3— incorporation of matter into search warrant by reference

   The description of items to be searched for, as well as a description of the place to be searched, may be incorporated into a search warrant by reference to the affidavit.

4. **Searches and Seizures § 3— description of items searched for — incorporation by reference proper**

Where each affidavit to obtain a search warrant and each warrant for arrest of the respective defendants incorporated by reference the attached lists of goods allegedly taken and each list contained approximately sixty individual entries including, where appropriate, the generic name of the items and the brand name and individual price, the reqirements of G.S. 15-26(a) with respect to the description of items to be seized were met.

5. **Criminal Law § 86— cross-examination of defendant — impeachment**

Where the solicitor asked defendant Cole on cross-examination if he had broken into one of three specific places of business, the questions related solely to what the witness had done, not to what others had accused him of doing and, in the absence of a showing of bad faith, were proper for purposes of impeachment.

APPEAL by defendants from *McKinnon, Judge,* 24 April 1972 Session of Superior Court held in ORANGE County.

Each defendant was charged with felonious breaking, entering and felonious larceny and each entered a plea of not guilty. The cases were consolidated for trial without objection and each defendant was found guilty as charged.

The State's evidence tended to show that E. M. Smith's grocery store had been broken into sometime between 8:30 p.m. on 13 January 1972 and 7:00 a.m. on 14 January 1972. A television set and a radio had been taken along with a variety of foodstuffs and 100 to 125 cartons of cigarettes, according to a list prepared by Mr. Smith with the aid of police. The value of the property taken was estimated to be approximately $700.00. On 20 January 1972 the police obtained search warrants and searched the home of each defendant. Details of the search warrants are discussed in the opinion. In defendant Shanklin's home the police found a radio and "enough cigarettes, meat and canned goods to load up a small pickup truck." At defendant Cole's home the police found a television set, a case of toilet tissue, washing detergents and frozen food still in wrappers identified as having come from Mr. Smith's store. Arrest warrants were obtained and both defendants were arrested sometime around midnight of 20 January. The next morning, after being advised of his rights, defendant Shanklin rode to the scene and identified Mr. Smith's store as one into which he and Cole had forced entry. Shanklin stated that he and Cole had used Cole's van in the break-in and that they had pried the door open, got their arms full of goods and loaded the van. Testi-

mony was introduced which tended to show that defendant Cole, having been advised of his rights, was present during Shanklin's statements and Cole stated that what Shanklin said was true.

Defendants' evidence tended to show that during the search of defendant Cole's home, the officers damaged clothing, furniture and crockery and generally ransacked the house. The Cole family consists of husband and wife and five children. Mrs. Cole testified that, as a rule, she kept her freezer full and that she has known her husband to purchase cigarettes by the case. Defendant Cole testified that on the night of 14 January 1972 he and defendant Shanklin went out to drink, play cards and talk. While they were thus occupied, defendant Cole testified that a boy took his van, which had been parked with the keys in it. When the boy returned two hours later, he offered to sell food, cirgarettes, a radio, clothing and washing powders to defendant Cole. Cole gave him $35.00 for some of the goods and it was this merchandise which the police found in Cole's home. Defendant Shanklin allegedly offered to buy part of the goods from Cole. Cole testified that after the search, he was read his rights and he drove his van to the Hillsborough jail. During this drive, Deputy Sheriff Hamlett allegedly offered to help out Cole if he would tell where he stole the merchandise. Cole said he was prevented from telephoning his wife from the jail and he was told to sign a paper to the effect that he had had his rights read to him. Cole denied being present when Shanklin made any statement about any break-in and he denied being at Mr. Smith's store on 14 January. Defendant Cole also denied breaking into three other stores specifically asked about on cross-examination. Defendant Shanklin did not testify.

Each defendant was sentenced to serve five years imprisonment and each was given credit against his sentence for time served in custody.

*Attorney General Robert Morgan by James E. Magner, Jr., Assistant Attorney General for the State.*

*John H. Snyder for defendant appellants.*

VAUGHN, Judge.

[1] Defendants' first two assignments of error challenge the denial of motions to quash the respective bills of indictment. Defendants argue that the location of the building allegedly broken

into is not stated and that the ownership of the property alleged to have been stolen is not indicated. The bill of indictment must allege all essential elements of the alleged offense with sufficient certainty so as to identify the offense, protect the accused from being twice placed in jeopardy, enable the accused to prepare of trial and support a judgment entered upon a plea or conviction. *State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897; *State v. Carroll,* 10 N.C. App. 143, 178 S.E. 2d 10. A motion to quash the bill of indictment is a proper method by which the question of the sufficiency of the bill of indictment may be raised. *State v. Partlow,* 272 N.C. 60, 157 S.E. 2d 688; *State v. Roper,* 3 N.C. App. 94, 164 S.E. 2d 95. Defendants' argument is without merit. Each bill of indictment recites, in pertinent part, as to each respective defendant:

> "That [name of defendant] late of the *County of Orange* on the 14th day of January, 1972, with force and arms at and *in the County aforesaid,* a certain building occupied by one E. M. Smith trading as E. M. Smith and Son Grocery wherein merchandise, chattels, money, valuable securities and other personal property were being well kept, unlawfully, wilfully, and feloniously did break and enter with intent to steal, take and carry away the merchandise, chattels, money, valuable securities and other personal *property of the said, E. M. Smith* against the form and Statute in such case made and provided and against the peace and dignity of the State." [emphasis added.]

Furthermore, each indictment also twice lists specific property of the value of $800.00 "of the goods, chattels and moneys of the said E. M. Smith." The body of each bill of indictment clearly identifies the county in which the subject building is located and identifies the name of the business carried on in that building and also identifies E. M. Smith as owner of the property allegedly taken from the building. We hold the descriptions in the bills of indictment are sufficient. *State v. Roper, supra; State v. Carroll, supra.* At the same time, we take this opportunity to repeat that the better practice would be to identify the premises by street address, highway address, rural road address or some clear description and designation to set the subject premises apart from like and other structures. *State v. Burgess,* 1 N.C. App. 142, 160 S.E. 2d 105.

[2] Defendants' third assignment of error attacks the denial of their motion to suppress evidence obtained through the use

of a search warrant which defendants contend was not issued on probable cause. In support of their position, defendants cite *United States v. Harris,* 403 U.S. 573, 29 L.Ed. 2d 723, 91 S.Ct. 2075; *Spinelli v. United States,* 393 U.S. 410, 21 L.Ed. 2d 637, 89 S.Ct. 584; *Aguilar v. Texas,* 378 U.S. 108, 12 L.Ed. 2d 723, 84 S.Ct. 1509; *Jones v. United States,* 362 U.S. 257, 4 L.Ed. 2d 697, 80 S.Ct. 725 and; *Nathanson v. United States,* 290 U.S. 41, 78 L.Ed. 159, 54 S.Ct. 11. Each deals with the sufficiency of affidavits used to support the issuance of a search warrant. As to the point raised in *Aguilar,* one affidavit in the present case contained the following:

> "Information was received from a reliable informer that he had seen part of the stolen property in [the trailer occupied by John Robert Shanklin.] Deputy McCullock has used information received from this same informer in the past and has gotten convictions from the information."

The section in brackets above was replaced in the other affidavit with the words "Roland Cole *(sic)* possession." The last sentence of the second affidavit read: "Deputy McCullock has used this informer in the past and has gotten conviction *(sic)* on information that was received from this informer." The *Spinelli* case, *supra,* requires that in the absence of a statement by the informer detailing the manner in which the information was gathered, it is especially important that he describe the accused's criminal activities in sufficient detail that the magistrate may know he is acting on something more substantial than a casual rumor or the accused's general reputation. *Nathanson, supra,* held that affirmation of suspicion and belief, standing alone, was an insufficient basis upon which to issue a search warrant. In the present case, however, the information received indicates the informant had seen part of the stolen property. The magistrate could reasonably infer from the details recited in the affidavit that the informant had gained his information in a reliable way. *Draper v. United States,* 358 U.S. 307, 3 L.Ed. 2d 327, 79 S.Ct. 329. An affidavit containing information within the personal knowledge of the informant and similar to the affidavit in the present case was upheld as sufficient to indicate the basis of a finding of probable cause in *State v. Moye,* 12 N.C. App. 178, 182 S.E. 2d 814. The date of "Friday morning 1-14-72" is recited as the date of the alleged crime in each affidavit and the date of the affidavit was 20 January 1972. The observations had to have been made within

that six day period and we hold that observations made within that period were recent enough to satisfy the standard of *Harris.*

We hold that the information contained in each affidavit was sufficent for the magistrate to find probable cause for the issuance of the search warrants for the premises of the respective defendants. It then follows that it was not error to deny defendants' motion to suppress evidence obtained through the use of these search warrants. Defendants' third assignment of error is without merit.

[3, 4]   Defendants' fifth assignment of error alleges that the State had failed to particularly describe the items found and taken during the searches and that "the search made was a general search" in violation of the Fourth Amendment to the Constitution of the United States. It is required by G.S. 15-26 (a) that:

"(a) The search warrant must describe with reasonable certainty the person, premises, or other place to be searched and the contraband, instrumentality, or evidence for which the search is to be made."

"The requirement that warrants shall particularly describe the things to be seized is to prevent the seizure of one thing under a warrant describing another and to leave nothing to the discretion of the officer executing the warrant in determining what is to be taken. *Marron v. United States,* 275 U.S. 192, 72 L.Ed. 231, 48 S.Ct. 74 (1927)." *State v. Foye,* 14 N.C. App. 200, 205, 188 S.E. 2d 67. The description of the items to be searched for, as well as a description of the place to be searched, may be incorporated in the warrant by reference to the affidavit. *State v. Flowers,* 12 N.C. App. 487, 183 S.E. 2d 820, *cert. den.* 279 N.C. 728, 184 S.E. 2d 885. In the present case, each affidavit to obtain a search warrant and each warrant for arrest of the respective defendants incorporates by reference the attached lists of goods allegedly taken. Each such list contains approximately sixty individual entries containing, where appropriate, the generic name of the items and the brand name and individual price. The requirements of G.S. 15-26 (a) were satisfied by the affidavits and attached lists in the present case. Defendants point out, however, that one officer testified that certain items not on the lists attached to the warrants were taken during the search of defendant Cole's premises. From this, they argue that the entire search was unreasonable

and in violation of the Fourth Amendment. This contention is without merit.

[5]   Defendants' final assignments of error are directed against questions asked by the solicitor of defendant Cole on cross-examination. Three questions were presented, each asking defendant Cole if he had broken into one of three specific places of business. Defendant responded in the negative to each question. A person charged with the commission of a crime is, at his own request, a competent witness but, if he is examined as a witness, he shall be subject to cross-examination as are other witnesses. In order to impeach a defendant's credibility as a witness, the solicitor is permitted to cross-examine the defendant as to collateral matters, including other criminal offenses and degrading actions, if the questions are based upon information and are asked in good faith. 2 Strong, N. C. Index 2d, Criminal Law § 86, p. 607. The questions related solely to what the witness had done, not to what others had accused him of doing and, in the absence of a showing of bad faith, were proper. *State v. Griffin*, 201 N.C. 541, 160 S.E. 826, *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174. Defendants' sixth, seventh and eighth assignments of error are overruled.

No prejudicial error has been made to appear.

No error.

Judges BRITT and PARKER concur.